## UNION MISSIONARY BAPTIST CHURCH v. FYKE et al.

No. 23751.    Feb. 2, 1937.

Suits & Disney, for plaintiff in error.

C. M. Oakes, H. T. Wolfe, Park Wyatt, Harper & Lee, W. N. Stokes, Geo. W. Grant, W. C. Hall, Floyd L. Rheam, and Blakeney & Ambrister, for defendants in error.

RILEY, J. This is an appeal from a judgment sustaining a demurrer and dismissing the petition in an action brought by plaintiff in error to quiet title to or determine ownership of certain oil and gas royalties accrued from a well drilled upon a tract of land conveyed to plaintiff in error with certain provisions and restrictions.

On and prior to February 16, 1912, G. W. Fyke and L. L. Fyke, husband and wife, were the owners of 160 acres of land in Pottawatomie county. On that date they executed a warranty deed to the plaintiff, the Union Missionary Baptist Church, conveying to said church a tract of land containing 1¼ acres in the northwest corner of said 160 acres of land. The deed was in the usual form, except directly after the description there was inserted the following clause:

"This deed is made expressly upon the condition that the said premises herein granted are to be used exclusively for a site for the erection and maintenance of a church building for the said Union Missionary Baptist Church and whenever the same shall hereafter cease to be used for such purpose, this deed shall become void and the title to the said premises shall revert to the grantors herein, their heirs and assigns."

The church went into possession under the deed, built a church thereon, and has ever since maintained the church.

Some years later the trustees of the church leased this tract of land for oil and gas development. A well was drilled by the lessees and oil was obtained. At the time this action was commenced, royalties from said well had accumulated in the amount of approximately $25,000. Fyke and his wife had also leased the N.W.¼ of the 160 acres to the Magnolia Petroleum Company.

The Magnolia Petroleum Company brought suit in the United States court against the lessees of the church to enjoin them from drilling on the church lot.

Fyke and wife filed a cross-bill in that case, alleging that the church and its lessees had no right to drill for oil and gas on the church lot, and asked that their title thereto be quieted subject to the lease of the Magnolia Petroleum Company.

No effective order of injunction was obtained pending that action until its final determination in the Circuit Court of Appeals. Magnolia Petroleum Co. v. Suits, 40 Fed. (2d) 161. In the meantime the church's lessees drilled a well on the church lot from which accrued the royalties.

The litigation in the federal court resulted in a decree in favor of the Magnolia Petroleum Company as against the church's lessee. But the cross-bill of Fyke and wife was dismissed without prejudice, because it appeared that all proper parties to the cross-bill were citizens and residents of Oklahoma, and the federal court was therefore without jurisdiction of the subject matter raised by the cross-bill. 40 Fed. (2d), supra.

Thereafter this action was commenced by the church against Fyke and wife and the other defendants who had purchased royalty interests from Fyke.

It appears that the royalty from the well on the church lot had and has been withheld, probably because of the litigation in the federal court. The claim of plaintiff is that Fyke and his wife and the other defendants have no right, title, or interest in or to the oil and gas rights and royalty in said land, but have prevented royalties being paid to plaintiff. Plaintiff prays that title to said royalty be quieted in the church, for an accounting, and for a reformation of the deed in certain particulars.

Defendants demurred to the amended petition of plaintiff. The demurrers were sustained, and plaintiff electing to stand upon the amended petition, the same was dismissed and plaintiff appeals.

If we are to follow the reasoning and the rule of law announced by the United States Circuit Court of Appeals for the Tenth Circuit, the judgment of the trial court in sustaining the demurrer and dismissing the petition must be sustained.

Substantially the same contention is here made by plaintiff as was made by it and its lessees throughout the litigation in the federal court. That is, that by the deed the church obtained a determinable fee to the plot of ground involved; that the condition inserted in the deed created a qualified or determinable fee, and that inasmuch as a church had been erected and maintained thereon, the fee title was vested in the church, and the right to lease the land for oil and gas and retain the royalty accumulating under the lease follows as a matter of law, and that such use of the land was not an improper one.

There is, however, a further contention in that it is now claimed the deed is in its terms ambiguous in the matter of the effect to be given the word "exclusively" as used in the special provision. That is, whether the special provision means that the premises are to be used exclusively for a site for the erection and maintenance of a church building, or whether to be used by the Union Missionary Church as a denomination, and by none other.

There is no ambiguity in this respect. The provision clearly means that the premises are to be used exclusively as a site for the

erection and maintenance of a church building, and exclusively by and for the Union Missionary Baptist Church, and that whenever the same shall cease to be used for that purpose, the deed becomes void and the title to the premises shall revert to the grantors or their assigns.

There has never been a contention that the premises have ceased to be used for "such purposes." There has never been a claim that the interest in the premises conveyed by the deed has been forfeited.

The question and the sole question is the right of the church, through its trustees, to use the land for the production of oil and gas. Was this a wrongful use of the premises, and if so, is plaintiff still entitled to the money derived from the royalty provided for in the lease?

The terms "base," "qualified," and "terminable fee" are used interchangeably.

The qualifications annexed to a base, qualified, or determinable fee may be either one of two kinds. It may be a qualification which attaches itself to the use of the land, so that the estate is held to be granted for that use and purpose only; and on cessation of the use the estate expires; or it may be one which is concerned with the happening of a more strictly collateral event, in that case it leaves the use of the estate free for any purpose, but limits its existence only by the event contemplated, or to the continuance of the state of affairs contemplated at the time of the grant. Jordan v. Goldman, 1 Okla. 406, 34 P. 371.

Here we have a plain qualification of the use of the land, but the reverter clause only applies to a cessation of the use authorized.

In Jordan v. Goldman, supra, the territorial court had under consideration the question of the use of certain lands in the "Cherokee Outlet" for purposes other than that specified in the grant. It was there held:

"The lands having been ceded and granted as an outlet, they cannot be lawfully used for any other purpose, either by the Cherokee Nation or persons claiming by license or lease under the Cherokee Nation; and the subjection of the lands to any other use is wrongful, and a breach of the qualification, or condition, annexed to the estate, and works a termination of the estate, and the lands revert to the United States."

If stone could not lawfully be taken from the lands comprising the "Cherokee Outlet" by the Cherokee Nation or its licensee or lessee, it follows logically that oil could not lawfully be taken from the lands here involved by the Union Missionary Baptist Church, or its lessee, for the qualification contained in the special clause in the deed is much stronger and more explicit than that contained in the grant of lands of the Cherokee Nation.

Concerning the deed in question, Judge Kennamer, in Magnolia Pet. Co. v. Suits, supra, said:

"The deed recites that it is made expressly upon the condition that the premises granted to the church are to be used exclusively for a site for the erection and maintenance of a church building for the Union Missionary Baptist Church. The language employed is clear and unambiguous, and means precisely what it states. It is capable of but a single construction, and that is that the church is to use the premises for a site for the erection and maintenance of a church building, with the further restriction that there is to be an exclusive use of the premises, viz., as a site for a church building."

Certainly the special provision limits the use to which the premises may be put. The exclusive use granted is for the site for the erection and maintenance of a church building. It is clearly apparent from the language used in the special clause that the intention of parties was that the grantors conveyed the land for the exclusive use as a site for the erection and maintenance of a church building; for that exclusive purpose and none other. The use thereof for the carrying on of the production of oil and gas from the land being wrongful, it is difficult to understand how the church could acquire title to the fruits of its wrongful acts.

Restrictions on the use of land, though repugnant to trade and commerce, may create a property right, and where the intention of the parties is clear in their creation and are confined within reasonable bounds, they will be upheld. 18 C. J. 385.

Such restrictions may be created by reservation in the deed, by conditions annexed to the deed, or by covenants. The important feature is whether the creation of the restriction is clearly defined and is understood by the parties at the time. 18 C. J. 384.

The restrictions here involved meet all these requirements.

It is contended that plaintiff is entitled to the proceeds of the oil taken under the lease given by it to maintain the church building. That is to say, it is entitled to

use the land in such a way as to produce oil therefrom and with the proceeds therefrom defray the expense of maintaining the church building. But reference to the special provision in the deed discloses that the premises were to be used exclusively for a site for the erection and maintenance of a church building, and not to pay the expense of erecting and maintaining the building.

The unpublished opinion of the federal district court denying the relief sought by Magnolia Petroleum Company in its action against the lessees of the church, and the cases therein cited, and Priddy v. School District No. 78, 92 Okla. 254, 219 P. 141, together with cases similar in some respects to those cited by the late Judge Pollock, are relied upon by plaintiff.

Priddy v. School District No. 78, supra, does not sustain plaintiff's contention. In that case there was no restriction as to the use of the land for purposes other than as a site for a schoolhouse. The reverter provision applied only to the cessation of the use of the land as a site for a schoolhouse. Plaintiffs were contending for a forfeiture because of alleged other use and not because the premises had been abandoned as a site for a schoolhouse. They were not seeking injunctive relief as did the Magnolia Petroleum Company in its action against the lessees of the church. As pointed out by the Circuit Court of Appeals in reversing the judgment of Judge Pollock, this court in the Priddy Case, supra, said: "In cautious regard of the plaintiff's rights," without holding that the additional use of the property was or was not wrongful, pointed the way to a proper remedy by injunction if such additional use was wrongful. It was merely held that the law action depending upon title in plaintiff was not maintainable.

As to the opinion of the federal district judge in Magnolia Petroleum Co. v. Suits, supra, and the line of cases cited therein, it appears that the Circuit Court of Appeals in reversing the district court was inclined to the opinion that those cases were the result of the "narrow rules of the common law in construing deeds and other instruments."

We are impressed with the statement that these narrow rules have given way to a more enlightened and broader doctrine, and that:

"The whole of a deed is now so construed as to effectuate the plainly expressed intention of the grantor, and to carry out the manifest purposes of the parties. The technicalities of the common law will not be permitted to override the intention so expressed."

Davis v. Skipper (Tex.) 83 S. W. (2d) 318, is cited by plaintiff in a supplementary brief as "completely decisive" of this case. It is in some respect contrary to the rule adopted in Jordan v. Goldman, supra, and the remedy suggested in Priddy v. School District, supra, in that it holds that under the provisions of the deed here involved injunction would not lie against additional uses. But, examining the reason for such holding, it appears that the plaintiff in that case had no interest whatever in the adjoining land, and therefore could not be damaged by taking oil from the one-acre tract deeded to the church.

The petition in this case does not allege that defendants did or did not have an interest in adjoining land which might be affected by the taking of oil from the church site, but merely alleges that defendants claim some interest in or to said tract and the oil and gas royalties accrued therefrom. It does plead the deed relied upon and attach a copy thereof to the petition. It does not allege that defendants Fyke had conveyed their entire interest in the tract of land out of which 1¼ acres were carved.

In this case it may fairly be presumed that the Fykes in conveying the church site placed the restriction as to the use of the land in the deed for the benefit of the remainder of the land owned by them. In making a conveyance the grantor has the legal right to impose a condition or restriction as to use from any motive. Hayes v. St. Paul M. E. Church, 196 Ill. 633.

Davis v. Skipper, supra, as to the question of injunctive relief is distinguishable from the instant case in that it did not appear that the grantor had other lands that might be benefited by a restriction on that part conveyed, or if he did, that such interest was still retained. It is also distinguishable in that it was there held that it was reasonably certain that so long as the property was used for church property there was no intention to restrict its physical use. This cannot be said in the instant case, because the provision is, "This deed is made upon the condition that the said premises herein granted are to be used exclusively for a site," etc. But if it were not distinguishable on this point, it would not be in accord with the holding of this court in Priddy v. School District, supra, as to the right of injunctive relief.

On the first question the case is in accord

with Priddy v. School District, supra. But there is no question of right of cancellation in this case, and we are not called upon to decide whether the church has forfeited the right to use the premises as a site for a church building.

The only question is: Does the petition state a cause of action as to entitle plaintiff to the money derived from the use of the land prohibited by the provision in the deed? We hold it does not, and the order and judgment are affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, and HURST, JJ., concur. WELCH and CORN, JJ., dissent. GIBSON, J., absent.