(No. 25475.—

THE REGULAR PREDESTINARIAN BAPTIST CHURCH OF PLEASANT GROVE *et al.* Appellees, *vs.* SAM PARKER *et al.* Appellants.

*Opinion filed April 17, 1940—Rehearing denied June 12, 1940.*

608

Forth, Schuman & Forth, Miller & Pfaff, and Walter W. Donley, for appellants.

Harry C. Moore, Courtney Arthur, and Arthur H. Shay, for appellees.

Mr. Justice Murphy delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Marion county entered in a suit quieting the title to one-half an acre of land which has an oil and gas well on it. In 1876, Madison G. Williams and Susan J. Williams, his wife, conveyed the tract in question by warranty deed to J. W. Snider, D. D. Sands and M. G. Williams, trustees of the Regular Predestinarian Baptist Church at Pleasant Grove, and their successors in office, "To have and to hold the same for church purposes as long as the same is used by the Regular Predestinarian Baptist Church as a place of meeting, but when such use is discontinued the said piece of land shall fall back to the grantors." August 26, 1938, the trustees of the church executed an oil and gas lease to Charles A. Baldwin and Clinton G. Farthing. They developed a well and began pumping the oil therefrom. The

church, its trustees and their lessees, are the plaintiffs in this suit. In 1891, Madison G. Williams, who owned the fractional quarter of which the tract in question was a part, conveyed the whole fractional part to Perry O. Bower and Theodosia E. Bower, but excepted the one-half acre previously conveyed to the church "as long as held by said church for church purposes then to revert to Perry O. Bower and Theodosia E. Bower." Defendant Sam Parker claims that by this exception the possibility of reverter held by Madison G. Williams was conveyed to the Bowers and by *mesne* conveyances is now held by him.

August 28, 1938, Flora Albert, Alpha Scrivner, Charles Daniels, Rufus Daniels, Mrs. Janie Bookhout, Jane York and Mary L. Jones Ker, the heirs-at-law of Madison G. Williams, executed an oil and gas lease to Allen Rule and W. R. Clarke. The defendants are Sam Parker and Effie Parker, his wife, the heirs-at-law of Madison G. Williams, and their lessees. Sam Parker filed a counter-claim and all the persons named as heirs-at-law of Madison G. Williams joined in a separate counter-claim. The decree appealed from dismissed the counter-claims and decreed that Sam Parker and Effie Parker, and the persons named as the heirs-at-law of Madison G. Williams, and their lessees, be forever enjoined and restrained from asserting any right, title or interest in the land as long as the same was used by the church as a place of meeting, or from asserting any right or title in or to the oil and gas produced or to be produced as long as the church used the premises as a place of meeting. All the defendants, except one of the lessees, joined in this appeal.

It is conceded the deed of Madison G. Williams and Susan J. Williams to the trustees of the church created in the grantee a base or determinable fee, and that the only right remaining in the grantor was a possibility of reverter. It is well established by the decisions of this court that a possibility of reverter is incapable of alienation or devise

but will pass by descent to the grantor's heirs. *North* v. *Graham,* 235 Ill. 178; *Presbyterian Church* v. *Venable,* 159 id. 215; *O'Donnell* v. *Robson,* 239 id. 634; *Dees* v. *Cheuvronts,* 240 id. 486.

The exception contained in the deed of Madison G. Williams to the Bowers did not convey to the Bowers the naked possibility of reverter held by Williams. Even if apt words of conveyance had been used, the interest would not have passed for it was not a subject of alienation. Since the Bowers received no title the *mesne* conveyances to Sam Parker conveyed nothing and his counter-claim was properly dismissed.

The heirs of Madison G. Williams contend plaintiffs use of the property was strictly limited to church purposes and that the execution of the oil and gas lease and the use to be made of the premises under its terms was so foreign to the purposes for which the property was conveyed, that the lease and the use to be made thereunder forfeits the title conveyed to the church. In support of such construction defendants make reference to sections 41, 42 and 43 of the Corporations act (Ill. Rev. Stat. 1874, chap. 32, pars. 41, 42, 43) and sections 41, 42 and 43 of the Corporations act (Ill. Rev. Stat. 1939, chap. 32, pars. 170, 171, 172) which confer on a church organization, organized under the act, the authority to hold property and to act through its trustees. Power is vested in the trustees to manage and dispose of the real and personal property of the church. Defendants claim the various sections should be considered in connection with the deed, and, when so considered, it is apparent that the grantors never intended the church should use the premises except for what defendants call "strictly" church purposes. By such construction they seek the means to apply the rules announced in various cases where lands have been granted or devised "exclusively" or "strictly" for some particular purpose, as illustrated by *Union Mis-*

*sionary Baptist Church* v. *Fyke,* 179 Okla. 102, 64 Pac. (2d) 1203, and other cases.

There is no material difference between the provisions of the statute in force at the time of the execution of the deed in 1876 and those in force at the present time. It is not necessary to mention specifically the provisions of each section for on the point under consideration they are substantially the same. The substance of the various sections is that a church organized under the act may receive by gift, devise or purchase lands, not exceeding ten acres, (now twenty acres) and may erect such houses, buildings or other improvements as may be deemed necessary for the convenience and comfort of such congregation, church or society, and the trustees may, when authorized by the congregation, mortgage, encumber, sell and convey any real or personal estate of the corporation and enter into lawful contracts in the name and on behalf of the corporation in the exercise of such powers. It is provided that the church can not use the property or dispose of the same in a way that will defeat the condition expressed in the gift, grant or devise. The provisions restrict the actions of the church and its trustees so as to prevent a use or disposal of the property in violation of the terms of the grant, but the enactments do not place any greater restraint upon the use or disposal of the tract than that specified in the conveyance.

The evidence shows the church was organized a short time prior to the execution of the deed and soon after its delivery a meetinghouse was erected thereon, which was the only building the church ever erected on the premises. In 1938, the church had a membership of 33 and held religious services once a month. The church, with three other organizations, employed a minister and he divided his time between the four organizations. At the trial it was stipulated that the premises were used for church purposes. The church corporation continued in existence from

the time of its organization until the trial. There was a lapse of many years when no meeting was held for the election of trustees, but there is evidence that under the laws of the church, trustees once elected served indefinitely.

The lease demised the premises for the purpose of mining and operating for oil and gas with the privilege to the lessees to lay pipelines and erect such structures as might be necessary to save and care for the oil products. The church was to receive a royalty of one-eighth of the oil produced and saved, plus certain cash payments to be made by the lessees from their part of the oil. If gas was obtained the church was to receive a certain royalty and free gas for all stoves and lights in the church buildings on the lands. There is one well on the premises producing oil but the evidence is that the church has not received any royalties or other benefits under the lease. No one representing the church appeared to have any knowledge of the amount of royalties accrued at the time of the trial. The record is silent as to the intended use of any royalties that may be received.

The qualifications annexed to a base or determinable fee may be either one of two kinds: (1) It may be a qualification which attaches itself to the use of the land, so that the estate is held to be granted for that use and purpose only, and on the cessation of the use the estate expires; or (2) it may be one which is concerned with the happening of a more strictly collateral event, in that case leaving the use of the estate free for any purpose, but limiting its existence only by the event contemplated, or to the continuance of the state of affairs contemplated at the time of the grant. (21 Corpus Juris, 923.) The qualification annexed to the base fee in this case is of the first classification. It attaches itself to the use of the land, and limits the use to church purposes of the church organization named in the deed.

In *Gannon* v. *Peterson,* 193 Ill. 372, it was held that equity would not interfere to enjoin equitable waste committed by the owner of a base or determinable fee unless it was made to appear that the contingency which will determine the fee is reasonably certain to happen and the waste is of such character that a court of equity can say that the party is charged with a wanton and conscienceless use of his rights. In that case this court refused to enjoin the owner of a base fee from leasing coal mining privileges.

In *Dees* v. *Chewvronts, supra,* lands were deeded to school trustees with the limitation "this deed made to the trustees of schools so long as it shall be used as a schoolhouse site and whenever it shall be discontinued as a schoolhouse site then to revert to the grantors." The school trustees executed an oil and gas lease but continued to use the property for school purposes. One of the grantors, and the heirs-at-law of the other grantor, undertook to enjoin the drilling for oil and gas. The rule announced in *Gannon* v. *Peterson, supra,* was followed and an injunction was denied.

In *Williams* v. *McKenzie,* 203 Ky. 376, 262 S.W. 598, lands had been conveyed to a school district with a provision in the grant that the title should revert to the grantor when the land was no longer used for common school purposes. The school trustees executed an oil lease. The grantor instituted a suit to recover the title or enjoin waste. It was held the school authorities were not devoting the premises to a use other than for school purposes and that the title should not revert to the grantor. In *Davis* v. *Skipper,* 125 Tex. 364, 83 S.W. (2d) 318, the grant created a base or determinable fee in a church organization with a limitation on the use for church purposes. It was held the execution of an oil and gas lease and development of a well did not terminate the title

of the church. In other cases where the grants contained similar provisions, the same conclusion has been reached. *Los Angeles University* v. *Swarth,* 107 Fed. 798; *Priddy* v. *School District No. 78,* 92 Okla. 254, 219 Pac. 141.

It is contended that the limitations upon the use for church purposes prohibited the church from entering into the field of speculation. The leasing of the land for oil and gas purposes was not a speculative venture. It was a move to obtain from the property its real value or to avoid the possibility of its being drained to adjacent lands. The evidence shows that on the adjoining lands there are five wells, all within 150 feet of the well drilled on these premises, and two other wells within 250 feet, and all seven are in operation. The fugacious nature of oil and gas as minerals is well known, and if a well had not been drilled on these premises the oil and gas would have drained to the wells on the adjoining land and would have been lost to the holders of the title of the premises in question.

For the reasons assigned the decree of the circuit court is affirmed.
*Decree affirmed.*