(No. 26285.—

AUGUST CARLSEN *et al.* Appellants, vs. ORIN A. CARTER *et al.* Appellees

*Opinion filed September 17, 1941.*

MILLS, UMFLEET & MILLS, for appellants.

CREIGHTON & KERR, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Wayne county, dismissing a complaint in which the appellants seek to assert a fee title to certain real estate, together with the rights to gas and oil now being produced thereon.

On June 3, 1866, Hampton F. Carter and Ann, his wife, conveyed a small tract of land 65 feet wide by 105 feet

long, to the trustees of the Bethel Methodist Episcopal church. This lot was located in the northwest corner of section 3, township 2 south, range 7 east of the third principal meridian, in Wayne county. The northwest corner of the lot was at the junction of two highways, one running along the west side and one on the north side, so that it extended east 65 feet from the section line on the west and south 105 feet from the section line on the north, the intersection being at the center lines of the two roadways.

The deed in question provided: "And the said party of the first part do by these presents defend all and singular the before mentioned tract of land with all the *appretunances* thereto belonging unto the party of the second part so long as the aforesaid premises shall be used as place of public divine worship. And in the event it ceases to be used for the purposes aforesaid or herein described, the land shall revert to original estate or party of the first part, their heirs or *asigns* and the buildings with all other *appertunances* thereto belonging shall be at the disposal of the party of the second part or their successors in office." Shortly after the execution of the deed a small church building was erected upon the tract and services were conducted in the building until 1922, when the old church was replaced by a new one.

Some time after the execution of this deed, Hampton F. Carter and his wife, donated, dedicated, or permitted the trustees to include in the church premises an additional strip of land 30 or 35 feet wide on the east of the plot described in the original deed, and an additional strip on the south, 26 feet in length. In 1922, the trustees purchased from one Clevenger an additional strip of land 28 feet wide along the east side of the original churchyard, and another strip 66 feet wide along the south side thereof. The new church was erected to the south and east of the old one and about 12 feet off of the disputed tract which thereafter became merely a part of the churchyard.

486

In 1938, the appellants executed an oil and gas lease to Glen A. Pace. Early in 1939, all of the heirs of the original grantors likewise executed gas and oil leases to Glen A. Pace. An oil producing well was drilled on the tract in question. Since then the Sohio Corporation has been purchasing the oil produced from the land and is withholding the royalties until ownership of the land is finally determined.

The appellants maintain the premises are still used as "a place of public divine worship" and that there has been no abandonment of this land by the church trustees. To the contrary, the appellees, heirs of the original grantors, contend that the appellants abandoned the tract in 1922 when they tore down the old church and that the condition in the deed under which they held title to the land has been breached. They further insist that the grant of the land to the church trustees was a grant of a base, qualified or determinable fee upon conditional limitation; that when the church trustees abandoned the premises in 1922 and ceased to use them as a "place of public divine worship" the title to the tract reverted to them as heirs of the original grantor, according to the tenor of the deed. The trial court sustained that contention and dismissed the complaint for want of equity. The Sohio Pipe Line Corporation was ordered to pay the royalties produced on the land to the appellees.

We agree with the construction placed upon the deed by the appellees, namely, that a base, qualified or determinable fee was created by the original grant. It is an estate in fee, because it may endure forever, (or for as long as the land is devoted to the particular use specified in the deed,) or it may be terminated by the happening of a contingency,—*i.e.*, a failure to employ the land for uses designated by the conveyance. *North* v. *Graham*, 235 Ill. 178; *Pure Oil Co.* v. *Miller-McFarland Drilling Co.* 376 id. 486.

To determine whether or not this estate has been terminated it is necessary to construe the facts, and as to them there is no substantial dispute. The original church building never occupied the entire tract, but appears to have been an ordinary country meetinghouse about 20 feet wide by 40 feet long and the remainder of the property from a time shortly after the Civil War down to 1922 was used as it is now as a church yard or lawn. It is used for church socials, outdoor revival meetings and parking space. It seems that the entrance or driveway to the church property comes on or across some portion of the land in question. It appears from the testimony of one preacher that vesper services and basket dinners accompanied by songs and prayer were frequently held in this yard. Since the erection of the new church the land has continued to be used in the same way.

We feel that a true interpretation of the facts indicates that except for the very small number of square feet actually under the roof of the old building the ground is used for the same religious purpose that it always has been. We cannot close our eyes to the fact that except in crowded areas of metropolitan districts, churches now are and always have been, surrounded by yard, a lawn, a cemetery, or, in the old days, by buggy sheds with hitching posts. We believe that these reasonable sized plots of ground, which are so conveniently used in connection with a church building for hitching horses or parking cars, or the holding of church festivals, are as much devoted to religious uses, and are as much a place of public divine worship, as that soil which is actually covered by the roof of the church building itself. These premises were certainly as much a part of "a place of public divine worship" when they were used for church suppers accompanied by songs and prayer, as was that portion thereof occupied by pulpit, organ and pews. The acquisition of more land for the erection of a larger and better meetinghouse cannot be said to constitute an abandonment

of that portion, nor any portion of the original tract, for it continued to be devoted to the exact purpose for which it was originally intended. To hold the contrary would be to impair the means of ingress and egress connected with the new church, to deface its beauty and accessability and deprive the congregation of parking facilities, lawn for church meetings and festivals and be in general contrary to the obvious intention of the original grantor.

It is urged that the drilling of an oil well on this land constitutes an abandonment, but this point was expressly decided against that contention in the case of *Predestinarian Baptist Church* v. *Parker,* 373 Ill. 607.

The decree of the circuit court of Wayne county is reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*