**UNITED STATES v. ILLINOIS CENT. R. CO. et al.**

**Civ. No. 1642.**

United States District Court
E. D. Illinois.
Dec. 30, 1949.

18

William W. Hart, U. S. Dist. Atty., East St. Louis, Ill., Ray M. Foreman, Asst. U. S. Dist. Atty., Danville, Ill., Ernest R. Mc-Hale, Asst. U. S. Dist. Atty., East St. Louis, Ill., Marvin J. Sonosky, Washington, D.C., for the Department of Justice, for plaintiff.

Charles A. Helsell and Richard C. Beckett, Chicago Ill., Bruce A. Campbell, East St. Louis, Ill., and Charles E. Feirich, Carbondale, Ill., for defendant Illinois Cent. R. Co.

Tim Lowry, Chicago, Ill., and Hugh V. Murray, Jr., Centralia, Ill., for defendant James W. Menhall, d.b.a. J. W. Menhall Drilling Co.

WHAM, Chief Judge.

This is a suit by the United States to enjoin defendants, Illinois Central Railroad Company and James W. Menhall, doing business as J. W. Menhall Drilling Company, from extracting oil and gas from certain parts of the right of way of that railroad located in Coles County, Illinois, and for an accounting of the oil and gas extracted therefrom to July 1, 1947. In this opinion the words "the defendant" when used in the singular will refer to the Illinois Central Railroad Company and the word "lessee" will refer to defendant Menhall. Title of plaintiff, as well as that of defendant, is in issue, for to succeed, the United States must show not only that the right to extract the oil is not in the defendant, but that it has title to the minerals underlying the right of way. It has been stipulated that the extraction of the oil, as now being accomplished, in no way interferes with the operation of the railroad or the use of its right of way for railroad purposes. Pending determination of title lessee is operating under a lease from plaintiff as well as from defendant, which fact, counsel agree, is without significance here on the question of title as between plaintiff and defendant.

All the facts are stipulated and only a question of law remains for decision. The question is whether, as against the plaintiff, the defendant has the right to extract the oil from under its right of way acquired from the State of Illinois under and by virtue of the grant from plaintiff hereinafter described and set forth. Under stipulated facts defendant has complied with all the requirements and conditions of the grant. That being true, it has title to the largest estate in the land occupied by its right of way it was possible for it to acquire within the meaning of said grant as of the time it was made.

The Illinois Central Railroad received its title by a conveyance from the State of Illinois acting under and pursuant to the Act of Congress of September 20, 1850, 9 Stat. 466,[1] entitled "An Act granting the Right of

---

1. "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the right of way through the public lands be, and the same is hereby, granted to the State of Illinois for the construction of a railroad from the southern terminus of the Illinois and Michigan Canal to a point at or near the junction of the Ohio and Mississippi Rivers, with a branch of the same to Chicago, on Lake Michigan, and another via the town of Galena in said State, to Dubuque in the State of Iowa, with the right also to take necessary materials of earth, stones, timber, etc., for the construction thereof; *Provided,* That the right of way shall not exceed one hundred feet on each side of

Way, and making a Grant of Land to the in Aid of the Construction of a Railroad States of Illinois, Mississippi, and Alabama, from Chicago to Mobile." As may be ob-

the length thereof, and a copy of the survey of said road and branches, made under the direction of the legislature, shall be forwarded to the proper local land offices respectively, and to the general land office at Washington city, within ninety days after the completion of the same."

"Sec. 2. *And be it further enacted,* That there be, and is hereby, granted to the State of Illinois, for the purpose of aiding in making the railroad and branches aforesaid, every alternate section of land designated by even numbers, for six sections in width on each side of said road and branches; but in case it shall appear that the United States have, when the line or route of said road and branches is definitely fixed by the authority aforesaid, sold any part of any section hereby granted, or that the right of preemption has attached to the same, then it shall be lawful for any agent or agents to be appointed by the governor of said State, to select, subject to the approval aforesaid, from the lands of the United States most contiguous to the tier of sections above specified, so much land in alternate sections, or parts of sections, as shall be equal to such lands as the United States have sold, or to which the right of preemption has attached as aforesaid, which lands, being equal in quantity to one half of six sections in width on each side of said road and branches, the State of Illinois shall have and hold to and for the use and purpose aforesaid: *Provided,* That the lands to be so located shall in no case be further than fifteen miles from the line of the road: *And further provided,* The construction of said road shall be commenced at its southern terminus, at or near the junction of the Ohio and Mississippi Rivers, and its northern term'nus upon the Illinois and Michigan Canal simultaneously, and continued from each of said points until completed, when said branch roads shall be constructed, according to the survey and location thereof: *Provided further,* That the lands hereby granted shall be applied in the construction of said road and branches respectively, in quantities corresponding with the grant for each, and shall be disposed of only as the work progresses, and shall be applied to no other purpose whatsoever: *And provided further,* That any and all lands reserved to the United States by the act entitled "An Act to grant a quantity of land to the State of Illinois, for the purpose of aiding in opening a canal to connect the waters of the Illinois River with

those of Lake Michigan, approved March second, eighteen hundred and twenty-seven, be, and the same are hereby, reserved to the United States from the operations of this act."

"Sec. 3. *And be it further enacted,* That the sections and parts of sections of land which, by such grant, shall remain to the United States, within six miles on each side of said road and branches, shall not be sold for less than double the minimum price of the public lands when sold."

"Sec. 4. *And be it further enacted,* That the said lands hereby granted to the said State shall be subject to the disposal of the legislature thereof, for the purposes aforesaid and no other; and the said railroad and branches shall be and remain a public highway, for the use of the government of the United States, free from toll or other charge upon the transportation of any property or troops of the United States."

"Sec. 5. *And be it further enacted,* That if the said railroad shall not be completed within ten years, the said State of Illinois shall be bound to pay to the United States the amount which may be received upon the sale of any part of said lands by said State, the title to the purchasers under said State remaining valid; and the title to the residue of said lands shall reinvest in the United States, to have and hold the same in the same manner as if this act had not been passed."

"Sec. 6. *And be it further enacted,* That the United States mail shall at all times be transported on the said railroad under the direction of the Post-Office Department, at such price as the Congress may by law direct."

"Sec. 7. *And be it further enacted,* That in order to aid in the continuation of said Central Railroad from the mouth of the Ohio River to the city of Mobile, all the rights, privileges, and liabilities hereinbefore conferred on the State of Illinois shall be granted to the States of Alabama and Mississippi respectively for the purpose of aiding in the construction of a railroad from said city of Mobile to a point near the mouth of the Ohio River, and that public lands of the United States, to the same extent in proportion to the length of the road, on the same terms, limitations, and restrictions in every respect, shall be, and is hereby, granted to said States of Alabama and Mississippi respectively." Approved, September 20, 1850, 9 U.S.Stat. 466, Chap. LXI.

served by reading the full text of said Act for convenience set forth in the margin, Section 1, briefly stated, grants the right of way to the State of Illinois through public lands for the construction of a railroad, with the right to take necessary materials of earth, stone, and timber for the construction thereof. Section 2 grants to the State of Illinois for the purpose of aiding in making the railroad every alternate section of land designated by even numbers for six sections in width on each side of said road, and provides that the land so granted be disposed of only as the work on the railroad progresses and shall be applied to no other purpose. Section 3 provides that all remaining public lands within six miles on either side of the railroad and branches shall be sold for not less than double the minimum price of public lands. Section 4 provides that the lands granted to the State of Illinois shall be subject to disposal by the legislature thereof for the aforesaid purposes and no other. It also provides that the railroad shall be and remain a public highway free of toll charge to the United States. Section 5 provides, in event the railroad is not completed within ten years, the State of Illinois shall be bound to pay the United States the amount received by it upon the sale of any part of said lands, that title of the purchasers from the State shall remain valid, and that any of said lands not disposed of by the State shall reinvest in the United States. Section 6 provides that the United States mail shall at all times be transported on said railroad under the direction of the Post Office Department at such price as the Congress may by law direct. By Section 7, for the same purposes, similar grants are made to the States of Alabama and Mississippi.

It is observed that while the grant is made in aid of the construction of a railroad a number of considerations of value to the grantor are expressed and implied which the defendant by its acceptance of the grant became bound to satisfy. Those considerations, among others, relate to transportation without toll charges to the Government, transportation of the mails at prices fixed by the Congress and the construction and perpetual maintenance and operation of a railroad over the right of way thereby granted through the public domain thus bringing enhanced value to the lands remaining in the government.

The Illinois Central Railroad received a deed in fee simple from the State of Illinois to the right of way and lands which had been granted to the State, as above set forth, subject, however, to said Act of Congress which was set forth in the deed. The character and the incidents of defendant's title are determined by the character and incidents of the title received by the State of Illinois by the aforesaid grant from the United States as affected by the compliance by defendant with all requirements imposed by the Act.

Counsel for the Government, relying on the principle enunciated in numerous cases, that any ambiguity in a grant is to be resolved favorably to a sovereign grantor and that nothing passes but what is conveyed in clear and explicit language, Great Northern Railway Company v. United States, 315 U.S. 262, at page 272, 62 S.Ct. 529, 86 L.Ed. 836; Barden v. Northern Pacific Railroad, 154 U.S. 288, 325–326, 14 S.Ct. 1030, 38 L.Ed. 992, argue that title to the subsurface minerals did not pass to the State of Illinois or to the railroad under said Act of Congress, but that title thereto remains in the United States. This argument is made only as to that portion of said grant described in Section 1 of the Act as "right of way through the public lands". No contention has been made that plaintiff retained or has any interest in the lands or the minerals under the lands granted by Section 2 of the Act. Counsel for the Government, in deference to expressions by the Supreme Court in decisions hereinafter referred to, concede that more than an easement in the right of way was received by the Illinois Central Railroad and that it is vested with some type of fee but argue that its rights under such fee will not permit the transfer of any part of the land occupied by the right of way such as would be effected by the extraction and sale of the oil but defendant's rights under its fee should be held to be limited to the use of the right of way for railroad purposes.

Counsel for defendant contend earnestly that it has a fee-simple title to the land occupied by its said right of way but says, if not, that under the strictest construction of the grant in plaintiff's favor it has a base or qualified fee subject only to an implied condition of reverter to plaintiff in event the land ceases to be used for railroad purposes. It further contends that a fee title of the latter character carries with it the right to use the land constituting the right of way as if it owned the fee-simple title as long as it retains the title and continues to operate its railroad over it; that such right of use includes the right to extract and sell the oil as long as the land is being used for a railroad right of way pursuant to the grant and such extraction does not interfere with such use. Numerous cases have been cited by counsel for both parties. Though a number are helpful, none are controlling as none considers or passes upon the right of the railroad to extract the oil from its right of way received by a grant from the United States of the character here under consideration made during the period this grant was made.

■ The nature and extent of the title to its right of way owned by defendant by virtue of said grant must be held to be that intended by Congress at the time of the grant, if such intention can be discerned. In Winona & St. P. R. Co. v. Barney, 113 U.S. 618, 625, 5 S.Ct. 606, 609, 28 L.Ed. 1109, speaking of the construction of legislative grants, the court said: "They are to receive such a construction as will carry out the intent of congress, however difficult it might be to give full effect to the language used if the grants were by instruments of private conveyance. To ascertain that intent we must look to the condition of the country when the acts were passed, as well as to the purpose declared on their face, and read all parts of them together."

In discussing means available to the court for arriving at the intent of Congress the court, in Great Northern Railway Company v. United States, supra, 315 U.S. at page 275, 62 S.Ct. at page 533, discussing a grant under the general right of way Act of March 3, 1875, 43 U.S.C.A. § 934 et seq., said: "But we are not limited to the life-less words of the statute and formalistic canons of construction in our search for the intent of Congress. The Act was the product of a period, and, 'courts, in construing a statute, may with propriety recur to the history of the times when it was passed'."

In the same opinion the court distinguishes between the periods in the legislative and economic history of the United States from 1850 to 1871 and the period following 1871 in relation to the grants of lands from public domain to encourage the building of railroads and the Congressional attitude toward such grants. It points out that the period beginning in 1850 was characterized by a Congressional policy of subsidizing railroad construction by lavish grants from the public domain of which the Illinois Central Grant here in question, together with the Union Pacific Grant of July 1, 1862, Chap. 120, 12 Stat. at L. 489; the Amended Union Pacific Grant, Act of July 2, 1864, Chap. 216, 13 Stat. at L. 356; and the Northern Pacific Grant, Act of July 2, 1864, Chap. 217, 13 Stat. at L. 365, are referred to as being typical of the period. In recognition of the unfavorable reaction of the public toward such lavish disposal of the public domain to large corporations the Congress ceased making outright grants in 1871 and for a time, as necessary, grants were made of mere rights of way through public lands by special acts until the Congress enacted said general right of way Act of March 3, 1875. Said opinion further characterizes the purpose and intent of Congress during the two periods by references to the nature of the rights given a railroad in its right of way by a grant under said Act of 1875 and by grants given before the shift in Congressional policy occurred in 1871. At pages 277-278 of 315 U.S., at page 535 of 62 S.Ct., the court said:

"That petitioner has only an easement in its rights of way acquired under the Act of 1875 is therefore clear from the language of the Act, its legislative history, its early administrative interpretation and the construction placed upon it by Congress in subsequent enactments.

"Petitioner, seeking to obviate this result, relies on several cases in this Court stating

that railroads have a 'limited', 'base', or 'qualified' fee in their rights of way. All of those cases, except Rio Grande Western R. Co. v. Stringham, 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136; Choctaw, O. & G. R. Co. v. Mackey, 256 U.S. 531, 41 S.Ct. 582, 65 L.Ed. 1076, and Noble v. Oklahoma City, 297 U.S. 481, 56 S.Ct. 562, 80 L.Ed. 816, deal with rights of way conveyed by land-grant acts before the shift in Congressional policy occurred in 1871. For that reason they are not controlling here. When Congress made outright grants to a railroad of alternate sections of public lands along the right of way, there is little reason to suppose that it intended to give only an easement in the right of way granted in the same act."

With the foregoing distinction drawn by the Supreme Court in mind it becomes apparent that the cases, as well as administrative interpretations of grants made subsequent to the change in Congressional policy

or under said Act of 1875, are not applicable to grants made to encourage railroad building prior to 1871. Nor is federal legislation enacted subsequent to 1871 relating to any interest of the United States in the rights of way of railroads applicable to the grant of the right of way here made in 1850 or indicative of the Congressional intent in making such grant in 1850.

Applicable to the period to which the Illinois Central Grant belongs is the case of Northern Pacific Railway Company v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044, in which the nature of the title granted the Northern Pacific in 1864 in the right of way in a grant similar to that to the Illinois Central is considered and defined in arriving at a decision that a portion of such right of way could not be acquired by a third party by adverse possession under the laws of Minnesota. That the full import of the decision may more clearly appear an extensive excerpt from the opinion is quoted in the margin.[2] The gist of the opinion

2. "In determining whether an individual, for private purposes, may, by adverse possession, under a state statute of limitations, acquire title to a portion of the right of way granted by the United States for the use of this railroad, we must be guided by the doctrine enunciated in Packer v. Bird, 137 U.S. 661, 669, 11 S.Ct. 210, 34 L.Ed. 819, 821, 210 and approvingly referred to in Shively v. Bowlby, 152 U.S. 1, 44, 14 S.Ct.Rep. 548, 564, 38 L.Ed. 331, 347, viz.: 'The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants; but whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states, subject to the condition that their rules do not impair the efficacy of the grants or the use and enjoyment of the property by the grantee.' Following decisions of this court construing grants of rights of way similar in tenor to the grant now being considered, (Territory of New Mexico v. United States Trust Co., 172 U.S. 171, 181, 43 L.Ed. 407, 410, 19 Sup.Ct. 128; St. Joseph & Denver City R. R. Co. v. Baldwin, 103 U.S. 426, 26 L.Ed. 578), it must be held that the fee passed by the grant made in § 2 of the act of July 2, 1864. But, although there was a present grant, it was yet subject to conditions expressly stated in the act, and also (to quote the language of the Baldwin case) 'to those necessarily implied, such as that the road shall be * * * used for the purposes designed.' Manifestly, the land forming the right of way was not granted with the intent that it might be absolutely disposed of at the volition of the company. On the contrary, the grant was explicitly stated to be for a designated purpose,—one which negated the existence of the power to voluntarily alienate the right of way or any portion thereof. The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is evident that, to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use, would be to allow that to be done by indirection which could not be done directly; for, as said

is that a present grant of the fee was granted to the railroad in its right of way by said Act of 1864 but subject to conditions expressed and implied in the grant and particularly that the land forming the right of way should be used for the purposes designed and not be absolutely disposed of either by the railroad or by operation of State laws. The court does not go so far as to interpret the implied condition against alienation to extend further than necessary to preserve the entire right of way for railroad purposes. The opinion reads: "In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." The opinion quotes from the opinion in Grand Trunk Railroad Co. v. Richardson, 91 U.S. 454 at page 468, 23 L. Ed. 356, "A railroad company . * * * is not at liberty to alienate any part of it [roadway] so as to interfere with the full exercise of the franchise granted." The latter court was dealing with a right of way granted by the State of Vermont. It held, in substance, that a license by the railroad to a third party to operate a saw mill and lumber yard on its right of way was not such an alienation as was void or unlawful under the grant. Again, in the Northern Pacific case, supra, 190 U.S. at page 272, 23 S.Ct. at page 673, the court said: "To repeat, the right of way was given in order that the obligations to the United States, assumed in the acceptance of the act might be performed."

On the authority of the Northern Pacific case it must be held that the defendant by its deed from the State of Illinois given pursuant to said grant in the Act of 1850, received and holds a limited fee in its right of way subject to an implied condition of reverter in the event it ceases to use or retain the right of way for the purpose for which it was granted.

What are the incidents of a limited fee title of the nature received by defendant? The Supreme Court in the Northern Pacific case was guided by the doctrine enunciated in Packer v. Bird, 137 U.S. 661, 669, 11 S.Ct. 210, 212, 34 L.Ed. 819, namely, "The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants; but whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states, subject to the condition that their rules do not impair the efficacy of the grants, or the use and enjoyment of the property, by the grantee." Applying that doctrine here it would seem that the laws of Illinois applicable to a limited fee title in land should be followed to the extent that they do not impair the efficacy of the grant to the Illinois Central for the use and purpose for which it was made. The rule in Illiniois is to the effect that title to the minerals underlying the surface with the right to extract them pass with a base or conditional fee. Dees v. Cheuvronts, 240 Ill. 486, 487, 88 N.E. 1011; Regular Predestinarian Baptist Church of Pleasant Grove v. Parker, 373 Ill. 607, 27 N.E.2d 522, 137 A.L.R. 635; Carlsen v. Carter, 377 Ill. 484, 36 N.E.2d 740. It would seem, therefore, that title to the minerals underlying the surface of the railroad right of way is in the defendant with the power to extract and use unless such extraction in some way impairs the efficacy of the grant or the use of the granted right of way for railroad purposes. It has been stipulated that the extraction of the oil as now being conducted

---

in Grand Trunk Railroad Co. v. Richardson, 91 U.S. 454, 468, 23 L.Ed. 356 'a railroad company * * * is not at liberty to alienate any part of it [roadway] so as to interfere with the full exercise of the franchises granted.' Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by Congress, for, as said in Northern Pacific Railroad Co. v. Smith,

171 U.S. 260, 261, 275, 18 S.Ct. 794, 799, 43 L.Ed. 158, 163, speaking of the very grant under consideration: 'By granting a right of way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' " Northern Pacific Railway Company v. Townsend, 190 U.S. 267, at pages 270-272, 23 S.Ct. 671, at page 672, 47 L.Ed. 1044.

in no way interferes with the operations of the railroad over and on its right of way. It is well known that oil is of a fugitive nature and subject to being extracted through wells on adjoining lands. Whether the oil is extracted by a well on the right of way which in no wise interferes with the operations of the railroad under an oil lease from the defendant or by a well located outside the right of way would seem equally not to affect the use of the whole of the granted right of way for railroad purposes within the meaning of the grant and the decisions of the United States Supreme Court in interpreting grants of a similar nature.

Even though the contentions of plaintiff were accepted that State law can have no weight in determining the rights of defendant under the limited fee granted by Congress there seems to be ample authority in the Northern Pacific case, supra, and in the history and background of the grant discussed in that case and in the Great Northern case, supra, to make it appear that it was the intent of Congress to withhold for the United States only the right of reversion required to insure as far as possible the perpetuation of the operation of the railroad the construction of which the grant was to aid and make possible. Such intent was in keeping with the Congressional policy and the public policy of the time when the grant was made. The lands occupied by the right of way were not classified as mineral lands and were not even suspected as having any value as such. The narrow, elongated strip of land constituting the right of way could have no other material value to the plaintiff while being used for railroad purposes unless minerals were present and the minerals and the right to remove same were reserved. There appears to be no adequate reason to believe that Congress, in granting more than an easement, intended any limitation upon the grant except said implied condition of reverter. It is believed that had an intent to reserve the minerals existed it would have been expressed as was the practice of Congress during the period preceding 1871 in making grants in which mineral lands and mineral rights were withheld. Illustrative of this practice are the grants under consideration in the following cases: Burke v. Southern Pacific Railroad Company, 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527; Corinne Mill Canal and Stock Company v. Johnson, 156 U.S. 574, 576, 15 S.Ct. 409, 39 L.Ed. 537; Barden v. Northern Pacific Railroad Company, supra; Northern Pacific Railway Company v. Myers, 172 U.S. 589, 590, 19 S. S.Ct. 276, 43 L.Ed. 564. The policy of Congress during the period of the Illinois Central grant in 1850 regarding minerals and mineral lands in the public domain and in making grants of public lands is discussed at length in the case of Work v. State of Louisiana, 269 U.S. 250, 46 S.Ct. 92, 70 L.Ed. 259, which involved unrestricted grants in aid of the reclamation of swamp lands. The grants contained no reservation of minerals and the minerals were held to have passed by the grant.

I conclude that the defendant has the right to extract and sell the oil from under its right of way in the manner now being followed by it and that the United States has no present interest in the oil or any right to an injunction to stay its extraction and sale and no right to an accounting.

 There are other contentions earnestly presented in briefs and arguments of counsel which I have considered but do not discuss except to say that they do not, in my opinion, affect the soundness of the conclusions I have reached and expressed herein. Perhaps it should be said that in my opinion the pleadings and judgment in the condemnation suit in this court entitled United States of America v. 2,319 Acres of Land in Jackson and Union Counties, Illinois, and Paul W. Baker, et al., at Law No. 2916,[3] involving a tract of land through which defendant's right of way passed in no way operates as res judicata of any essential issue before the court. I am of opinion that plaintiff's contention that the Act of May 21, 1930, 46 Stat. 373, 30 U.S.C.A. § 301, is applicable here and requires the lessee to have an oil lease from plaintiff before he can lawfully extract and dispose of the oil from under defendant's right of way is not tenable.

3. No opinion for publication.

Though said statute is made applicable to lands embraced in railroad or other rights of way acquired under any law of the United States whether the same be a base fee or mere easement it is not applicable in the case before the court for the reason that the United States, by the Act of September 20, 1850 granted the fee in the right of way subject only to an implied condition of reverter and retained no interest in the oil and has no interest subject to lease.

Counsel for defendant Illinois Central Railroad Company may prepare the formal findings of fact and decree pursuant to this opinion and present same upon notice.