**Joseph M. BURKE, as Stockholder of the Gulf, Mobile and Ohio Railroad Co., a corporation for the use and benefit of the Gulf, Mobile and Ohio Railroad Co., a Corporation, Plaintiff,**

v.

**GULF, MOBILE AND OHIO RAILROAD CO., and the Persons, Firms and Corporations hereinafter listed in Paragraphs 3, 4, 5 and 6 of the Complaint, Defendants.**

Civ. A. No. 6258–70.

United States District Court,
S. D. Alabama, S. D.

March 30, 1971.

Irvin J. Langford, Mobile, Ala., for plaintiff.

Sam W. Pipes, III and Norton Brooker, Mobile, Ala., for G. M. & O. Railroad Co.

William H. Cox, Jr., Jackson, Miss., for Pearl Production Co.

Ben H. Harris, Jr., Mobile, Ala., for Merchants National Bank.

Thornton Price-William, pro se.

H. S. Jernigan, pro se.

T. E. Twitty, Sr., Mobile, Ala., for Alabama Power Co.

S. P. Gaillard, Jr., Mobile, Ala., for S. P. Gaillard, Jr. and others.

Joseph H. Howie, Jackson, Miss., for M. M. McGowan.

Hardy B. Smith, Mobile, Ala., for Raymond H. Lloyd.

Edwin J. Curran, Jr., Mobile, Ala., for Alma D. Johnson and Fred E. Roan.

J. E. Skinner, Jackson, Miss., for George W. Harrison, Jr. and E. E. Harrison.

Ben Kilborn, Mobile, Ala., for Vincent F. Kilborn and River Towboats Inc.

James L. Spencer, Jackson, Miss., for R. W. Hyde, Jr.

James L. May, Jr., Mobile, Ala., for Standard Oil Co.

Harry H. Riddick, Mobile, Ala., for The Roger Williams Development Co.

A. Paul Cadenhead, Atlanta, Ga., for Estate of O. J. Parker, Jr., deceased.

Swep S. Taylor, Jr., Jackson, Miss., for R. G. Duke, Jr. and Gammill Investment Co.

D. R. Coley, Jr., Mobile, Ala., for D. R. Coley, Jr. and Warren E. Odom.

David W. Green and Sidney H. Schell, Mobile, Ala., for Elsie M. Schwartz and others, Richard K. Sions and W. J. Harris, Jr. as Trustees for the Ralph B. Chandler Foundation, Texaco, Inc., and Sarah H. Wood, Charles E. Arch and Robert E. Wood, III.

## OPINION AND ORDER ON MOTIONS TO DISMISS

PITTMAN, District Judge.

This is a stockholder's derivative suit brought against, and for the benefit of,

the Gulf, Mobile and Ohio Railroad Company (GM&O). Plaintiff seeks to assert for the railroad a claim to the oil, gas and minerals on and under two strips of land twenty-five or fifty feet wide, on either side of GM&O's existing 100 feet right-of-way through the Citronelle oil field in Mobile County, Alabama. Plaintiff asserts that this court has jurisdiction by virtue of 28 U.S.C.A. § 1331 because this is a suit "to construe two Acts of Congress."

The two Acts in question are the Act of March 3, 1849, entitled "An Act to grant the Right of Way to the Mobile and Ohio Railroad Company," (the 1849 Act, 9 Stat. 772), and the Act of September 20, 1850, 9 Stat. 466 entitled "An Act granting the Right of Way, and making a Grant of Land to the States of Illinois, Mississippi, and Alabama, in aid of the Construction of a Railroad from Chicago to Mobile," (the 1850 Act).

The 1849 Act granted to the Mobile and Ohio Railroad (GM&O's predecessor) the right to construct their line through public lands from Mobile to the mouth of the Ohio river. The right-of-way was to be:

" * * * one hundred feet in width, and, furthermore, an additional quantity of twenty-five feet in width on each side of said road along the same, which land shall be reserved from sale, and the title whereof shall be vested in the State wherein such land shall lie, for the use of said railroad company forever, and for no other use whatever." (Emphasis added.)

Section 2 of the 1849 Act provided, inter alia:

"That the said Mobile and Ohio Railroad Company shall have the privilege, and the same is hereby granted to them, to cut and use all such timber, and to use all earth, stone, sand, gravel, mineral, and other materials on the public lands of the United States, which may be necessary for the construction or repair of said road, and to build bridges, or construct buildings, truss work, or other erections, such as the same may require, and use

such water as may be wanted, and cross such streams as shall be necessary for the completion and use of said road * * *." (Emphasis added.)

On July 18, 1849, plaintiff alleges, the M&O filed a certified copy of a plat with a 150 foot right-of-way for the proposed road; thereafter, the road was actually constructed. It is undisputed that the filing of the plat and the subsequent construction of the road gave the railroad some interest in at least a one hundred foot right-of-way through the public lands.

The Act of 1850 granted public lands, described by the Act in more detail than is relevant here, to the States of Illinois, Mississippi, and Alabama for the purpose of constructing a railroad from Mobile to the mouth of the Ohio river and thence to Chicago, Illinois. As far as the present litigation is concerned, the 1850 Act added one important detail. It provided:

" * * * that the right of way shall not exceed one hundred feet on each side of the length thereof, and a copy of the survey of said road and branches, made under the direction of the legislature, shall be forwarded to the proper local land offices respectively, and to the general land office at Washington City, within ninety days after the completion of the same." (Emphasis added.)

The M&O did not refile a plat showing that it was taking a right-of-way of two hundred feet (one hundred feet on either side of the road as authorized by the 1850 Act); plaintiff argues, however, the requirement of a new plat was waived by the government and that the railroad assumed the extra land automatically.

Since these two Acts were passed the M&O, and later the GM&O, has claimed a limited fee in a one hundred foot right-of-way. The limitation on their fee interest, they feel, being a reversionary interest in the United States if the land ceases to be used for railroad pur-

poses. Plaintiff alleges that GM&O has leased some of the mineral rights to the land within the one hundred foot right-of-way, and has not attempted to exercise any control over any portion of the other one hundred feet in issue here.

The situation remained in this posture until 1966 when one A. B. Case made the following offer to the GM&O.

"I propose to divulge to you certain information showing the ownership of unleased mineral interests of yours in the Citronelle oil field, from which oil is now being extracted and for which you are not being paid. Upon divulging this information to you, and if and when you should be fully satisfied that you are the true and sole owner of the mineral interests in the described land, and if you should then *desire to exercise* your *ownership* of said mineral interests, *I will then pay* you One Thousand Dollars (*$1,000.00*) *for a lease of a three-eights (⅜)* undivided working *interest* in the minerals in said land." (Emphasis added.)

The offer was accepted by GM&O. Case then disclosed his theory: that the M&O railroad had been granted a limited fee, not in a hundred foot right-of-way but in at least a one hundred fifty, and possibly a two hundred foot right-of-way. The railroad, apparently not convinced of its ownership, declined or at least failed to lay claim to the extra property.

The next event of interest here occurred on September 4, 1969, when the present plaintiff, a neighbor of Case, bought twenty-five shares of GM&O stock. In October 1969, Case, through his attorney, again approached the GM&O and asked that the railroad acknowledge its ownership of the land and execute a lease with Case for a three-eighths undivided working interest in the minerals. On April 2, 1970, GM&O, through its retained counsel, announced that it declined to give the desired lease.

On April 8, 1970, at the annual stockholders' meeting, the plaintiff introduced three resolutions which would, if passed, require: the directors to "acknowledge" the company's ownership of the additional fifty feet of right-of-way under the 1849 Act; that the directors "acknowledge" the company's ownership of the additional fifty feet of right-of-way under the 1850 Act; and, that the directors be directed to execute the previously described lease with Mr. Case. All three resolutions failed for want of a second. The present action followed.

## JURISDICTION

■ Defendants attack this court's jurisdiction in this cause which, as noted, is invoked to determine a federal question, specifically, to construe two Acts of Congress. The defendants contend, however, that the action is no more than an action to quiet title and cite cases for the proposition that the mere fact that title may ultimately be traced to a federal patent is not a sufficient federal question for jurisdictional purposes. See, e. g., Florida Central & Peninsular RR v. Bell, 176 U.S. 321, 20 S.Ct. 399, 44 L.Ed. 486 (1900).

■ The rule to which the defendants refer is a necessary one. Without such a rule title to much, if not most, land in the United States could be cleared in federal court because title could ultimately be traced to a United States patent. The federal question is not so obscure in the instant case, however. Plaintiffs allege that the railroad has rights under an Act of Congress granting the lands in question *directly* to the company; the federal grant is not merely the first link in a long chain of ownership, it is the only link. The questions of what rights are granted to the railroad by the Acts and the clarity with which they are granted are crucial issues to the resolution of this controversy. Construction of two Congressional Acts being the basis of this suit, this court has jurisdiction to entertain it. See Northern Pacific RR v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903).

## MERITS

The next question presented by the defendants' motions is whether the complaint states a cause of action.

■ Defendants cite ample cases to support the existence of the "good business judgment rule" in Alabama. See, e. g., King v. Livingston Mfg. Co., 192 Ala. 269, 68 So. 897 (1915). See also Fletcher's Cyclopedia of Corporations §§ 5821–22. The import of this general rule is that minority stockholders of a corporation must show fraud, excess, or abuse of discretion in order to overturn the decisions of the directors. Defendants ask that the complaint be dismissed because it does not allege such fraud, rather the plaintiff claims only that the railroad has failed to assert its claim to the extra land through "error, oversight, or omission."

Plaintiff maintains that such fraud or abuse of discretion need not be alleged when the suit is to prevent the directors giving away corporate assets. He argues that this is such a case. This court cannot agree. This is not a suit to stop the officers from giving away an asset which is in the possession, or is undeniably the property, of the railroad. There is a serious question as to the ownership of the disputed strips.

To say that the railroad has a clear right to possession and that the directors have no discretion in this matter, difficult questions would have to be decided the way the plaintiff claims they should be.

First, it would have to be clear that the additional twenty-five feet on either side of the basic one hundred foot right-of-way, claimed and conveyed to third parties by GM&O, under the 1849 Act, was granted to the railroad in limited fee. By that Act the title to this additional fifty feet of right-of-way is vested in the State. The right of the railroad to transfer mineral rights in this land is not clear. They run the risk of warranty and other claims by grantees in their past conveyances if the plaintiff's contention should be correct.

Second, by failing to let sleeping dogs lie, the railroad runs the risk of losing what it already has. The company claims a limited fee in the present one hundred foot right-of-way. By litigating plaintiff's claim to the extra fifty feet there is a possibility that it could lose the fee in what it already has. United States v. Illinois Central RR, 89 F.Supp. 17 (D.C.1949) is authority for the claim that the grant is a limited fee. A more recent Supreme Court decision, United States v. Union Pacific RR, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957), suggests by dictum however, that pre-1866 railroad land grants will be interpreted as granting only an easement over public lands, reserving title to the minerals to the United States. The possibility of having to litigate title to the present one hundred feet is certainly a factor the directors could consider before starting a fight over the extra fifty, i. e., twenty-five feet on each side of the present one hundred foot right-of-way.

Finally, as to the 1850 Act, plaintiff candidly admits that the railroad's claim for still another fifty feet is not as clear as the 1849 Act claims. This being the case, any decision to instigate litigation is committed to the sound discretion of the directors.

■ Looking to the facts alleged in the plaintiff's complaint, as the court should on this motion to dismiss, and facts conceded to be correct in arguments before the court, the court holds as a matter of law that the decision on whether to litigate this claim is within the discretion of the directors. Since the plaintiff does not allege fraud, excess, or abuse of discretion, it follows that he has not stated a cause of action, therefore, the defendants' motions for dismissal should be granted and the complaint is hereby dismissed.

Costs to be taxed against the plaintiff.