# GREAT NORTHERN RAILWAY CO. *v.* UNITED STATES.

No. 149.   Argued January 13, 14, 1942.—Decided February 2, 1942.

*Mr. F. G. Dorety* for petitioner.

264

266

*Mr. Vernon L. Wilkinson,* with whom *Solicitor General Fahy, Assistant Attorney General Littell,* and *Mr. Richard S. Salant* were on the brief, for the United States.

Mr. Justice Murphy delivered the opinion of the Court.

We are asked to decide whether petitioner has any right to the oil and minerals underlying its right of way acquired under the general right of way statute, Act of March 3, 1875, c. 152, 18 Stat. 482.

The United States instituted this suit to enjoin petitioner from drilling for or removing gas, oil and other minerals so situated, and alleged in its complaint substantially that petitioner, in 1907, acquired from the St. Paul, Minneapolis and Manitoba Railway all of the latter's property, including rights of way granted it under the Act of March 3, 1875, a portion of which crosses Glacier County, Montana; that petitioner acquired neither the right to use any portion of such right of way for the purpose of drilling for or removing subsurface oil and minerals, nor any right, title or interest in or to the deposits underlying the right of way, but that the oil and minerals remained the property of the United States; and, that although no lease had been issued to petitioner under the Act of May 21, 1930, 46 Stat. 373, petitioner claimed ownership of the oil and minerals underlying its right of way and threatened to use the right of way to drill for and remove subsurface oil.

Petitioner admitted certain allegations of fact, denied the allegation that title to the oil and minerals was in the United States, and asserted that it proposed to drill three separate oil wells—the oil from the first to be sold commercially, that from the second to be refined, the more volatile parts to be sold and the residue to be used on petitioner's locomotives, and that from the third to be used in its entirety by petitioner as fuel.

Pursuant to a motion therefor by the United States, judgment was rendered on the pleadings and petitioner was enjoined from "using the right of way granted under

the Act of March 3, 1875, 18 Stat. 482, for the purpose of drilling for or removing oil, gas and minerals underlying the right of way." The Circuit Court of Appeals affirmed. 119 F. 2d 821. The importance of the question and an asserted conflict with *Rio Grande Western Ry. Co.* v. *Stringham*, 239 U. S. 44, moved us to grant certiorari. 314 U. S. 596.

The Act of March 3, 1875, from which petitioner's rights stem, clearly grants only an easement, and not a fee. Section 1 indicates that the right is one of passage since it grants "the," not a, "right of way through the public lands of the United States." Section 2 adds to the conclusion that the right granted is one of use and occupancy only, rather than the land itself, for it declares that any railroad whose right of way passes through a canyon, pass or defile "shall not prevent any other railroad company from the *use and occupancy* of the said canyon, pass, or defile, for the purposes of its road, *in common* with the road first located." [1]

Section 4 is especially persuasive. It requires the location of each right of way to be noted on the plats in the local land office, and "thereafter all such lands *over* which such right of way shall pass shall be disposed of *subject to* such right of way." [2] This reserved right to dispose of the lands subject to the right of way is wholly inconsistent with the grant of a fee. As the court below pointed out, "Apter words to indicate the intent to convey an easement would be difficult to find." That this was the precise intent of § 4 is clear from its legislative history.[3] While § 4 pro-

---

[1] Emphasis added.

[2] Emphasis added.

[3] This clause first appeared in a special right of way statute, Portland, Dalles, and Salt Lake Act of April 12, 1872, 17 Stat. 52. Congressman Slater reported that bill for the Public Lands Committee, and, in discussing the reason for the clause, said:

"Mr. SLATER. The point [of this clause] is simply this: the land over which this right of way passes is to be sold subject to the right

vides a method for securing the benefits of the Act in advance of construction,[4] no adequate reason is advanced for believing that it does not illumine the nature of the right granted. The Act is to be interpreted as a harmonious whole.

The Act is to be liberally construed to carry out its purposes. *United States* v. *Denver & R. G. Ry. Co.,* 150 U. S. 1, 14; *Nadeau* v. *Union Pacific R. Co.,* 253 U. S. 442; *Great Northern Ry. Co.* v. *Steinke,* 261 U. S. 119. But the Act is also subject to the general rule of construction that any ambiguity in a grant is to be resolved favorably to a sovereign grantor—"nothing passes but what is conveyed in clear and explicit language"—*Caldwell* v. *United States,* 250 U. S. 14, 20–21, and cases cited. Cf. *Great Northern Ry. Co.* v. *Steinke, supra.* Plainly, there is nothing in the Act which may be characterized as a "clear and explicit" conveyance of the underlying oil and minerals. The Act was designed to permit the construction of railroads through the public lands and thus enhance their value and hasten their settlement. The achievement of that purpose does not compel a construction of the right of way grant as conveying a fee title to the land and the underlying minerals; a railroad may be operated though its right of way be but an easement.[5]

---

of way. It simply provides that this right of way shall be an incumbrance upon the land for one hundred feet upon each side of the line of the road; that those who may afterward make locations for settlement shall not interfere with this right of way.

"Mr. SPEER, of Pennsylvania. It grants no land to any railroad company?

"Mr. SLATER. No, sir." [Cong. Globe, 42d Cong., 2d Sess., 2137 (1872).]

[4] The right of way may be located by construction. Dakota Central R. Co. *v.* Downey, 8 L. D. 115; *Jamestown & Northern R. Co.* v. *Jones,* 177 U. S. 125; *Stalker* v. *Oregon Short Line R. Co.,* 225 U. S. 142.

[5] In *Railway Co.* v. *Alling,* 99 U. S. 463, and *Smith* v. *Townsend,* 148 U. S. 490, statutory rights of way were held to be but easements. And,

But we are not limited to the lifeless words of the statute and formalistic canons of construction in our search for the intent of Congress. The Act was the product of a period, and, "courts, in construing a statute, may with propriety recur to the history of the times when it was passed." *United States* v. *Union Pacific R. Co.*, 91 U. S. 72, 79. And see *Winona & St. Peter R. Co.* v. *Barney*, 113 U. S. 618, 625; *Smith* v. *Townsend*, 148 U. S. 490, 494; *United States* v. *Denver & R. G. Ry. Co.*, 150 U. S. 1, 14.

Beginning in 1850, Congress embarked on a policy of subsidizing railroad construction by lavish grants from the public domain.[6] This policy incurred great public disfavor,[7] which was crystallized in the following resolution adopted by the House of Representatives on March 11, 1872:

"*Resolved,* That in the judgment of this House the policy of granting subsidies in public lands to railroads and

---

it has been held that railroads do not have a fee in those portions of their rights of way acquired by eminent domain proceedings. See *East Alabama Ry. Co.* v. *Doe*, 114 U. S. 340; *Quick* v. *Taylor*, 113 Ind. 540, 16 N. E. 588; *Missouri, K. & N. W. R. Co.* v. *Schmuck*, 69 Kan. 272, 76 P. 836; *Keown* v. *Brandon*, 206 Ky. 93, 266 S. W. 889; *Hall* v. *Boston & Maine Railroad*, 211 Mass. 174, 97 N. W. 914; *Roberts* v. *Sioux City & P. R. Co.*, 73 Neb. 8, 102 N. W. 60; *Washington Cemetery* v. *Prospect Park & C. I. R. Co.*, 68 N. Y. 591.

[6] Typical were the Illinois Central Grant, Act of September 20, 1850, c. 61, 9 Stat. 466; Union Pacific Grant of July 1, 1862, c. 120, 12 Stat. 489; Amended Union Pacific Grant, Act of July 2, 1864, c. 216, 13 Stat. 356; and Northern Pacific Grant, Act of July 2, 1864, c. 217, 13 Stat. 365. This last grant was the largest, involving an estimated 40,000,000 acres. In view of this lavish policy of grants from the public domain it is not surprising that the rights of way conveyed in such land-grant acts have been held to be limited fees. *Northern Pacific Ry. Co.* v. *Townsend*, 190 U. S. 267. Cf. *Missouri, K. & T. Ry. Co.* v. *Roberts*, 152 U. S. 114.

[7] See "Land Grants," 9 Encyclopedia of the Social Sciences (1933), p. 35; "Land Grants to Railways," 3 Dictionary of American History (1940), p. 237.

other corporations ought to be discontinued, and that
every consideration of public policy and equal justice to
the whole people requires that the public lands should be
held for the purpose of securing homesteads to actual
settlers, and for educational purposes, as may be provided
by law." Cong. Globe, 42d Cong., 2d Sess., 1585 (1872).
After 1871 outright grants of public lands to private rail-
road companies seem to have been discontinued.[8]   But, to
encourage development of the Western vastnesses, Con-
gress had to grant rights to lay track across the public do-
main, rights which could not be secured against the sov-
ereign by eminent domain proceedings or adverse user.
For a time special acts were passed granting to designated
railroads simply "the right of way" through the public
lands of the United States.[9]   That those acts were not
intended to convey any land is inferable from remarks in
Congress by those sponsoring the measures.   For example,
in reporting a bill granting a right of way to the Dakota
Grand Trunk Railway (17 Stat. 202), the committee chair-
man said: "This is merely a grant of the right of way."[10]
Likewise, in reporting a right of way bill for the New
Mexico and Gulf Railway Company (17 Stat. 343), Mr.
Townsend of Pennsylvania, the same Congressman who
sponsored the Act of 1875, observed: "It is nothing but a
grant of the right of way."[11]

---

[8] *Ibid.*   And see H. Rept. No. 10, 43d Cong., 2d Sess. (1874), p. 1
(Ser. No. 1656) recommending that a bill to grant lands to aid in the
construction of a railroad not pass.   See also the remarks of Mr. Dun-
nell in reporting a special right of way bill for the Public Lands Com-
mittee, Cong. Globe, 42d Cong., 2d Sess., 2543 (1872), and those of
Mr. Townsend, who was in charge of the bill which became the Act of
1875, in reporting to the House the Senate bill and the House substitute.
Cong. Rec., 43d Cong., 2d Sess., Vol. 3, pt. 1, 404 (1875).

[9] The Forty-second and Forty-third Congresses (1871–1875) passed
at least fifteen such acts.

[10] Cong. Globe, 42d Cong., 2d Sess., 3913 (1872).

[11] Cong. Globe, 42d Cong., 2d Sess., 4134 (1872).   See also p. 2543.

The burden of this special legislation moved Congress to adopt the general right of way statute now before this Court. Since it was a product of the sharp change in Congressional policy with respect to railroad grants after 1871, it is improbable that Congress intended by it to grant more than a right of passage, let alone mineral riches. The presence in the Act of § 4, which, as has been pointed out above, is so inconsistent with the grant of a fee, strongly indicates that Congress was carrying into effect its changed policy regarding railroad grants.[12]

Also pertinent to the construction of the Act is the contemporaneous administrative interpretation placed on it by those charged with its execution. Cf. *United States* v. *Johnston,* 124 U. S. 236, 253; *United States* v. *Moore,* 95 U. S. 760, 763; *Norwegian Nitrogen Co.* v. *United States,* 288 U. S. 294, 315. The first such interpretation, the general right of way circular of January 13, 1888, was that the Act granted an easement, not a fee.[13] The same position was taken in the regulations of March 21, 1892, 14 L. D. 338, and those of November 4, 1898, 27 L. D. 663. While the first of these circulars followed the Act by 13 years, the weight to be accorded them is not dependent on strict contemporaneity. Cf. *Swendig* v. *Washington Co.,* 265 U. S. 322. This early administrative gloss received indirect Congressional approval when Congress repeated the language of the Act in granting canal and reservoir companies rights of way by the Act of March 3, 1891, c. 561, 26 Stat.

---

[12] See note 3, *ante.*

[13] "The act of March 3, 1875, is not in the nature of a grant of lands; it does not convey an estate in fee, either in the 'right of way' or the grounds selected for depot purposes. It is a right of use only, the title still remaining in the United States. . . .

"All persons settling on public lands to which a railroad right of way has attached, take the same subject to such right of way and must pay for the full area of the subdivision entered, there being no authority to make deductions in such cases." 12 L. D. 423, 428.

1101, and when Congress made the Act of 1875 partially applicable to the Colville Indian Reservation by Act of March 6, 1896, c. 42, 29 Stat. 44. Cf. *National Lead Co.* v. *United States*, 252 U. S. 140, 146.

The circular of February 11, 1904, 32 L. D. 481, described the right as a "base or qualified fee." This shift in interpretation was probably due to the description in *Northern Pacific Ry. Co.* v. *Townsend*, 190 U. S. 267, 271, of a right of way conveyed in a land-grant act (13 Stat. 365) as a "limited fee, made on an implied condition of reverter." [14] But the earlier view was reasserted in the departmental regulations of May 21, 1909, 37 L. D. 787.[15] After 1915, administrative construction bowed to the case of *Rio Grande Western Ry. Co.* v. *Stringham*, 239 U. S. 44, which applied the language of the *Townsend* case to a right of way acquired under the Act of 1875. We do not regard this subsequent interpretation as binding on the Department of the Interior since it was impelled by what we regard as inaccurate statements in the *Stringham* case. Cf. *Helvering* v. *Hallock*, 309 U. S. 106, 121.

Congress itself in later legislation has interpreted the Act of 1875 as conveying but an easement. The Act of June 26, 1906, c. 3550, 34 Stat. 482, declaring a forfeiture of unused rights of way, provides in part that: "the United States hereby resumes the full title to the lands covered thereby [by the right of way] freed and discharged from such easement." This language is repeated in the forfeiture act of February 25, 1909, c. 191, 35 Stat. 647. Also on June 26, 1906, an act [16] was passed confirming the rights of way which certain railroads had acquired under

---

[14] See note 6, *ante*.

[15] The decisions of the Lands Department construing the 1875 Act are in accord. Fremont, E. & M. V. Ry. Co., 19 L. D. 588; Mary G. Arnett, 20 L. D. 131; John W. Wehn, 32 L. D.. 33; Grand Canyon Ry. Co. *v.* Cameron, 35 L. D. 495.

[16] 34 Stat. 481.

the 1875 Act in the Territories of Oklahoma and Arizona. The House committee report on this bill said: "The right as originally conferred and as proposed to be protected by this bill simply grants an easement or use for railroad purposes. Under the present law wherever the railroad passes through a tract of public land the entire tract is patented to the settler or entryman, subject only to this easement." [17] It is settled that "subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject." *Tiger* v. *Western Investment Co.*, 221 U. S. 286, 309. See also *Cope* v. *Cope*, 137 U. S. 682; *United States* v. *Freeman*, 3 How. 556. These statutes were approximately contemporaneous with petitioner's acquisition of the rights of way of the St. Paul, Minneapolis and Manitoba Railway.

That petitioner has only an easement in its rights of way acquired under the Act of 1875 is therefore clear from the language of the Act, its legislative history, its early administrative interpretation and the construction placed upon it by Congress in subsequent enactments.

Petitioner, seeking to obviate this result, relies on several cases in this Court stating that railroads have a "limited," "base," or "qualified" fee in their rights of way.[18] All of those cases, except *Rio Grande Western Ry. Co.* v. *Stringham*, 239 U. S. 44, 47; *Choctaw, O. & G. R. Co.* v. *Mackey*, 256 U. S. 531; and *Noble* v. *Oklahoma City*, 297

---

[17] H. Rept. No. 4777, 59th Cong., 1st Sess., p. 2 (Ser. No. 4908); cf. S. Rept. No. 1417, 59th Cong., 1st Sess., p. 2 (Ser. No. 4904).

[18] *Buttz* v. *Northern Pacific Railroad*, 119 U. S. 55; *Clairmont* v. *United States*, 225 U. S. 551; *Missouri, K. & T. Ry. Co.* v. *Roberts*, 152 U. S. 114; *Missouri, K. & T. Ry. Co.* v. *Oklahoma*, 271 U. S. 303; *New Mexico* v. *United States Trust Co.*, 172 U. S. 171; *Northern Pacific Ry.* v. *Townsend*, 190 U. S. 267; *United States* v. *Michigan*, 190 U. S. 379; *Northern Pacific Railway Co.* v. *Ely*, 197 U. S. 1; *Rio Grande Western Ry. Co.* v. *Stringham*, 239 U. S. 44; *Choctaw, O. & G. R. Co.* v. *Mackey*, 256 U. S. 531; *Noble* v. *Oklahoma City*, 297 U. S. 481.

U. S. 481, deal with rights of way conveyed by land-grant acts before the shift in Congressional policy occurred in 1871. For that reason they are not controlling here.[19] When Congress made outright grants to a railroad of alternate sections of public lands along the right of way, there is little reason to suppose that it intended to give only an easement in the right of way granted in the same act. And, in none of those acts was there any provision comparable to that of § 4 of the 1875 Act that "lands over which such right of way shall pass shall be disposed of subject to such right of way." None of the cases involved the problem of rights to subsurface oil and minerals.

In the *Stringham* case, it was said that a right of way under the Act of 1875 is "neither a mere easement, nor a fee simple absolute, but a limited fee, made on an implied condition of reverter in the event that the company ceases to use or retain the land for the purposes for which it is granted, and carries with it the incidents and remedies usually attending the fee." The railroad had brought suit to quiet title to a portion of its right of way. Stringham asserted title to that portion by virtue of a purported purchase of surface rights from a placer mine claimant. The Supreme Court of Utah reversed the judgment of the trial court and remanded the case, directing the entry of "a judgment awarding to the plaintiff title to a right of way over the lands in question." 38 Utah 113, 110 P. 868. The railroad again appealed, asserting that it should have been adjudged "owner in fee simple of the right of way over the premises." The Supreme Court of Utah affirmed the judgment of the trial court on the ground that the railroad's proper remedy was by petition for rehearing of the first appeal. 39 Utah 236, 115 P. 967. Both judgments were brought to this Court by writ of

---

[19] See note 6, *ante.*

error. It was held that the second judgment presented nothing reviewable. The first judgment was affirmed since it "describes the right of way in the exact terms of the right-of-way act, and evidently uses those terms with the same meaning they have in the act."

The conclusion that the railroad was the owner of a "limited fee" was based on cases arising under the land-grant acts passed prior to 1871, and it does not appear that Congress' change of policy after 1871 was brought to the Court's attention.[20] That conclusion is inconsistent with the language of the Act, its legislative history, its early administrative interpretation and the construction placed on it by Congress in subsequent legislation. We therefore do not regard it as controlling. Statements in *Choctaw, O. & G. R. Co.* v. *Mackey,* 256 U. S. 531, and *Noble* v. *Oklahoma City,* 297 U. S. 481, that the 1875 Act conveyed a limited fee are dicta based on the *Stringham* case, and entitled to no more weight than the statements in that case. Far more persuasive are two cases involving special acts granting rights of way, passed after 1871 and rather similar to the general act of 1875.[21] *Railway Co.* v. *Alling,* 99 U. S. 463, characterized the right so granted as "a present beneficial easement," and *Smith* v. *Townsend,* 148 U. S. 490, referred to it as "simply as an easement, not a fee." We think that the Act of 1875 is to be similarly construed.

Since petitioner's right of way is but an easement, it has no right to the underlying oil and minerals. This result does not freeze the oil and minerals in place. Petitioner is free to develop them under a lease executed pursuant to the Act of May 21, 1930, 46 Stat. 373.

During the argument before this Court, it was fully developed that the judgment was rendered on the plead-

---

[20] No brief was filed by the defendant or the United States.

[21] 17 Stat. 339; 23 Stat. 73.

ings, in which petitioner denied the allegation of title in the United States, and there was no proof or stipulation that the United States had any title. On this state of the record, the United States was not entitled to any judgment below. However, we permitted the parties to cure this defect by a stipulation showing that the United States has retained title to certain tracts of land over which petitioner's right of way passes, in a limited area,[22] and that petitioner intended to drill for and remove the oil underlying its right of way over each of those tracts. Accordingly, the judgment will be modified and limited to the areas described in the stipulation. As so modified, it is

*Affirmed.*

MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[22] Lots 1, 2 and 3, Sec. 12; lots 1, 4, 5, 9 and 10, Sec. 13, T. 29 N., R. 15 W., Montana Meridian, all being within the exterior boundaries of the Glacier National Park; NW¼ SE¼ Sec. 28; NW¼ Sec. 29; NE¼ NW¼ Sec. 30; NE¼ Sec. 34, T. 32 N., R. 24 E., Montana Meridian.