409 F.2d 56
 WILEN MANUFACTURING CO., Inc., Appellant,
v.
The STANDARD PRODUCTS COMPANY, Appellee.
 No, 24869.
 
 United States Court of Appeals Fifth Circuit.
 Feb. 21, 1969, Rehearing Denied March 28, 1969.
 Louis Regenstein, Miles J. Alexander, William G. Vance, Atlanta, Ga., for appellant, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., of counsel.
 D. R. Cumming, Jr., Bennett L. Kight, Atlanta, Ga., for appellee, Sutherland, Asbill & Brennan, Atlanta, Ga., of counsel.
 Before JOHN R. BROWN, Chief Judge, and AINSWORTH and GODBOLD, Circuit judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This diversity action for breach of contract and fraudulent misrepresentation was brought by Wilen Manufacturing Company, a Georgia corporation with its principal place of business in Atlanta, against Standard Products, an Ohio corporation with its principal place of business in Cleveland. The trial court granted the defendant's motion to dismiss the complaint for lack of personal jurisdiction, holding that service of process on the defendant in Ohio was insufficient because the Georgia long-arm statute establishing jurisdiction over nonresidents for causes of action arising out of tortious acts committed in Georgia[1] did not apply to corporations.[2] The sole question presented on this appeal is whether the term 'nonresident' in the Georgia statute is restricted to natural persons.[3]
 
 
 2
 In the absence of any decision by a Georgia appellate court construing the long arm statute, the district court properly undertook to exercise its independent judgment as to the meaning of the act. See Kellerman v. Miller, 354 F.2d 46 (5th Cir. 1965); Holliday v. Wade, 117 F.2d 154 (5th Cir. 1941). Its decision, and appellee's supporting arguments, rest primarily on linguistic analysis. The statute provides, 'A court of this state may exercise personal jurisdiction over any nonresident, or his executor or administrator.' The appellee contends that the qualifying phrase following the word 'nonresident' restricts the application of the statute to natural persons only, since a corporation can have neither an executor nor an administrator. Appellee points to instances in which other states, seeking to expand the jurisdiction of their courts, have expressly made their statutes applicable to corporations, and it cites examples where the Georgia legislature has made explicit reference to corporations when enacting statutes dealing with out-of-state defendants.
 
 
 3
 The appellant meets these verbal analyses with opposing linguistic contentions. Citing the rule that 'the masculine gender shall include the feminine and neuter,'[4] it urges that 'nonresident' includes both natural persons and corporations and that the qualifying words in the statute expand rether than restrict it. It points out that a New York long arm statute which used the term 'nondomiciliary' was applied to corporations.[5] It lists instances where 'nonresident' is used alone in other Georgia statutes but is applied to both corporations and natural persons.
 
 
 4
 As is frequently the case, we find linguistic analysis unavailing. Cf. United States v. American Trucking Association, 310 U.S. 534, 543-544, 60 S.Ct. 1059, 84 L.Ed. 1345, 1351 (1940). We turn instead to the purposes of the statute and the consequences of adopting one or the other of the interpretations advanced.
 
 
 5
 Our search for legislative purpose focuses on the history and present setting of the statute. Cf. Great Northern Railway Co. v. United States,315 U.S. 262, 273, 62 S.Ct. 529, 533, 86 L.Ed. 836, 841 (1942).[6] The background against which this legislation is set is permeated with the burgeoning growth of state court jurisdiction since the Supreme Court's decision in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). The development of the long arm statute, by which the states have taken advantage of the expanded reach of process under the 'minimum contacts' doctrine in order to protect their citizens from the nationwide economic activity of those residing out of state, is too well chronicled to necessitate lengthy discussion here. See generally, Currie, The Growth of the Long Arm, 1963 U.Ill.L.F.515; Note, Developments in the Law: State-Court Jurisdiction, 73 Harv.L.Rev. 909 (1960). The movement was accurately forecast by Mr. Justice Black in McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957):
 
 
 6
 Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. * * * At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
 
 
 7
 Prior to the enactment of its long arm statute in 1966, the reach of Georgia's process was restricted by such classical standards of personal jurisdiction as 'residence' and 'doing business.' See Sterling Materials Co., Inc. v. McKinley, 218 Ga, 574, 129 S.E.2d 770 (1963); Lamex, Inc. v. Sterling Extruder Corp., 109 Ga.App. 92, 135 S.E.2d 445 (1964). Georgia's passage of a statute similar in language to those of other states[7] during the period of the growth of the long arm leads to the inference that, like her sister states, Georgia intended to afford her citizens the protection of her courts from claims arising out of contemporary multistate economic activity. In the absence of any evidence to the contrary, we accept the conclusion that the Georgia statute was 'designed to take advantage of the liberalized constitutional concepts governing the exercise of personal jurisdiction over nonresidents,' see Weissman, The Georgia Long Arm Statute: A Significant Advance in the Concept of Personal Jurisdiction, 4 Ga.State B.J. 13 (1967), thereby accommodating its jurisdictional power to the 'fundamental transformation of our national economy' discussed by Mr. Justice Black. See McGee v. International Life Insurance Co., supra.
 
 
 8
 In today's economy the corporate entity is normally synonymous with multistate economic activity. The corporation as much as the individual is the 'nonresident' that moves across state lines. As a practical matter restricting the long arm statute to natural persons would in large measure frustrate the objective of affording a local forum to Georgia citizens who have causes of action arising from the local activity of those residing out of state. None of the numerous other states adopting long arm statutes have restricted the reach of their acts to natural persons. The exclusion of corporations would have no basis in history or logic and would be contrary to the raison d'etre of the long arm. We conclude it was not intended by the Georgia General Assembly.[8]
 
 
 9
 The judgment below is reversed.
 
 
 
 [1]
 Fed.R.Civ.P. 4(d)(7) provides that service of process on a foreign corporation may be made 'in the manner prescribed by law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.'
 
 
 [2]
 Ga.Laws 1966, at 343 (Ga.Code Ann. 24-113.1) provides:
 Personal jurisdiction over nonresidents of State.-- A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to cause of action arising from any of the acts, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:
 (a) Transacts any business within this State, or
 (b) Commits a tortious act within this State, except as to a cause of action for defamation of character arising from the act; or
 (c) Owns, uses or possesses any real property situated within this State.
 In 1968, following the district court's decision in the present case, the General Assembly passed a bill amending the statute by defining 'nonresident' to include 'a corporation which is not organized or existing under the laws of this State and is not authorized to transact business in this State at the time a claim or cause of action under Section 1 of this Act arises.' Ga.Laws 1968, at 1419-20 (Ga.Code Ann. 24-117). The bill provided, 'The definition of 'non-resident' in (section 24-117) shall not be construed as expressing the intention of the General Assembly of Georgia as to the meaning of 'non-resident' as used in (section 24-113.1) prior to the effective date of (this amendment).'
 
 
 [3]
 The district court did not reach appellee's contentions that it has not committed any act in Georgia in person or through an agent which would subject it to jurisdiction under the statute. We do not consider this issue, since it involves questions of fact not passed on below
 
 
 [4]
 Ga.Code Ann. 102-102(3) (rev.ed.1968)
 
 
 [5]
 See Lewin v. Block Laundry Machine Co., 42 Misc.2d 599, 249 N.Y.S.2d 49 (Sup.Ct.) aff'd 22 A.D.2d 854, 255 N.Y.S.2d 466 (App.Div.1964) aff'd 16 N.Y.2d 1070, 266 N.Y.S.2d 391, 213 N.E.2d 686 (Ct.App.1965) construing N.Y.Civ.Prac.Act 302(a)
 
 
 [6]
 Since the Georgia legislature does not keep a journal of its debates, there is no legislative history to guide our determination. We reject appellant's suggestion that we consider the subsequent declarations of legislators made with reference to this case as authority for the legislature's intent. Once enacted, a statute's construction is a judicial function
 
 
 [7]
 See, e.g., Uniform Interstate and International Procedure Act, 95 Uniform Laws Ann. 307-05 (1962); Code of Ala., Tit. 7, 199(1) (Supp.1968); Ill.Rev.Stat., Ch. 110, 17 (1965); La.Rev.Stat.Ann., Tit. 13, 3206 (1968); Me.Laws 1959, Ch. 317, 125; Wis.Stat.Ann. 262.05 (1967)
 
 
 [8]
 Our analysis of the statute is in keeping with Georgia's canons of statutory construction. Ga.Code Ann. 102-102(9) (rev.ed.1968) provides:
 In all interpretations, the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy. Grammatical errors shall not vitiate, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands.