# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-1766

_____

Dorothy Ellen Trevarton, et al.

*Plaintiffs - Appellants*

v.

State of South Dakota; South Dakota Game, Fish, and Parks

*Defendants - Appellees*

Rails to Trails Conservancy

*Amicus on Behalf of Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 21, 2015
Filed: March 25, 2016

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Plaintiffs are ranchers in Fall River County, South Dakota, who own properties underlying and surrounding a railway right-of-way easement granted by the United States to Grand Island and Wyoming Central Railroad Company in 1897. Burlington

Northern Railroad Company ("BN") subsequently acquired the easement but ceased railroad operations on the line in 1986. In 1987, BN applied to the Interstate Commerce Commission, now the Surface Transportation Board ("STB"),[1] for an exemption permitting expeditious abandonment of the line. See 49 U.S.C. § 10903 (requirements to abandon a rail line); 49 C.F.R. § 1152.50. The STB granted but then revoked an exemption prior to completion of the abandonment and instead authorized BN to enter into an "interim trail use/rail banking agreement" in accordance with the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247(d), as implemented by the STB in 49 C.F.R. § 1152.29. In December 1989, BN quit-claimed its interest in the right-of-way to the State of South Dakota, through its Department of Game, Fish & Parks, for interim trail use. In 1998, South Dakota converted the right-of-way to a non-motorized public recreational trail, part of the 109-mile George S. Mickelson Trail from Edgemont to Deadwood, South Dakota ("the Trail").

In April 2014, Plaintiffs commenced two separate actions in state court against the State and the Department of Game, Fish, and Parks, seeking a declaration quieting title to the right-of-way in Plaintiffs because the easement terminated by operation of law when BN ceased railroad operations. Defendants removed to federal court and moved to dismiss. Plaintiffs filed Amended Complaints seeking declarations (i) that the STB erred in ruling that the right-of-way was not abandoned before BN sold its interest to Defendants; and alternatively (ii) "that Defendants stand in the shoes of their railroad predecessors-in-interest concerning easement rights." Defendants filed renewed motions to dismiss for lack of jurisdiction and for failure to state a claim. See Fed. R. Civ. P. 12(b)(1), 12(b)(6). The district court consolidated the two cases, concluded that both of Plaintiffs' claims fall within the exclusive jurisdiction of the STB, and granted Rule 12(b)(1) dismissals for lack of subject matter jurisdiction.

---

[1]The STB assumed the relevant functions of the Interstate Commerce Commission in January 1996. See 49 U.S.C. §§ 1301-02 (previously 49 U.S.C. §§ 701-02). For simplicity, this opinion will refer to both agencies as the STB.

Plaintiffs appeal, challenging only the dismissal of their alternative claims regarding the scope of Defendants' easement. Concluding that these claims are not within the STB's *exclusive* jurisdiction, but that the Amended Complaints failed to state a claim upon which relief can be granted, we modify this part of the district court's judgment to be a Rule 12(b)(6) dismissal and otherwise affirm.

1. BN's easement was initially granted under the General Railroad Right-of-Way Act of 1875 ("1875 Act"), now codified at 43 U.S.C. § 934. See generally Marvin M. Brandt Revocable Trust v. United States, 134 S. Ct. 1257 (2014). Plaintiffs allege that prior to 1998, railroads that held this easement over the years used the right-of-way only for railroad operations, while Plaintiffs "continuously used the railroad easement for purposes of grazing cattle, hauling cattle, feed, and water, and traveling from one portion of their property to the other." Now, they allege, South Dakota allows countless Trail users to trespass on Plaintiffs' lands, harassing cattle and littering. South Dakota also forbids Plaintiffs from operating motor vehicles on the Trail and has successfully prosecuted two Plaintiffs and a ranch hand for using the Trail as part of their ranch operations.

2. In the district court, Plaintiffs' primarily focused on their claims that, when BN ceased railroad operations, the railway easement died and their fee interests became unburdened by the right-of-way that formerly passed through their properties. The Supreme Court's decision in Brandt clarified property law principles underlying this argument. The Court explained that "the 1875 Act clearly grant[ed a railroad such as BN] only an easement, and not a fee." 134 S. Ct. at 1267, quoting Great N. Ry. v. United States, 315 U.S. 262, 271 (1942). "Unlike most possessory estates, easements . . . may be unilaterally terminated by abandonment, leaving the servient owner with a possessory estate unencumbered by the servitude." Id. at 1265, quoting Restatement (Third) of Property: Servitudes § 1.2 cmt. d (1998). In Great Northern, the Court held that an 1875 Act right-of-way granted the railroad only an easement, and therefore the United States as owner of fee title to the right-of-way retained the

underlying oil and minerals. 315 U.S. at 279-80. In <u>Brandt</u>, the Court adhered to its decision in <u>Great Northern</u> and held that, when railroad operations were abandoned, an 1875 Act right-of-way easement was extinguished; it did not revert to the United States, owner of the land when the easement was first granted. 134 S. Ct. at 1268.

The problem with Plaintiffs' claims that the easement acquired by Defendants had been extinguished by abandonment was the STB decision in 1989 revoking BN's exemption before abandonment of the right-of-way was completed, and authorizing BN to enter into an interim trail use agreement. Plaintiffs argued to the district court that the STB erred in ruling the right-of-way was not abandoned. The district court held, quite properly, that it lacked jurisdiction to consider this collateral attack on the STB's exclusive jurisdiction to determine whether a rail line has been abandoned, a decision that was subject to judicial review only by a petition to this court. <u>See</u> <u>Grantwood Village v. Mo. Pac. R.R.</u>, 95 F.3d 654, 657-58 (8th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1149 (1997). Plaintiffs do not challenge this jurisdictional ruling on appeal.

3. The district court extended its jurisdictional ruling to Plaintiffs' second claim, seeking a declaration that South Dakota "stand[s] in the shoes of [its] railroad predecessors-in-interest concerning easement rights," and therefore Defendants' non-possessory easement requires only that Plaintiffs as servient landowners not interfere with the *railroad* uses the right-of-way easement authorized. Defendants argued, and the district court agreed, that the court "does not have jurisdiction to determine the relative rights of the parties over the use of the easement" because the STB "retains 'exclusive and plenary jurisdiction' over the right-of-way." We disagree.

This is not a claim that the easement was abandoned, as in <u>Grantwood</u>. Here, *after* the STB determined the railroad easement was not abandoned, the easement was conveyed to Defendants pursuant to an interim trail use agreement. The issue Plaintiffs raise is whether Defendants, in managing the Trail, have violated Plaintiffs'

property rights as servient landowners. Without question, the STB retains jurisdiction over an unabandoned right-of-way. See Neb. Trails Council v. STB, 120 F.3d 901, 904 (8th Cir. 1997). Consistent with 16 U.S.C. § 1247(d), the STB's regulations provide that a prospective trail sponsor must provide the STB with "[a] statement indicating the trail sponsor's willingness to assume full responsibility for . . . [m]anaging the right-of-way." 49 C.F.R. § 1152.29(a)(2)(i). But was that a grant of *exclusive* jurisdiction?

In support of the district court's ruling, Defendants and their amicus rely on 49 U.S.C. § 10501(b), which provides that the STB's jurisdiction over transportation by rail carriers "is exclusive." Cf. City of Lincoln v. STB, 414 F.3d 858, 860-61 (8th Cir. 2005) (upholding STB order that City's acquisition of part of an operating railroad's right of way to use as a trail would impermissibly interfere with railway operations). There are no current railroad operations on this right-of-way, and no allegation that day-to-day management of the Trail would interfere with the STB's future authority to restore or reconstruct the right-of-way "for railroad operations." 16 U.S.C. § 1247(d). If the grant of authority to require trail operators to manage interim-use trails gives the STB exclusive jurisdiction over interim trail use, Congress has precluded all state and federal courts and all other administrative agencies from exercising any jurisdiction over trail activities, even activities that have no impact on present or future rail operations. In our view, to confirm the logical inference that Congress did not intend this minimal grant of regulatory authority to confer exclusive jurisdiction, we need look no further than the intent of Congress as expressed in the Trails Act.

The Trails Act established a national trails system "to provide for the ever-increasing outdoor recreation needs of an expanding population and . . . the preservation of . . . outdoor areas and historic resources." 16 U.S.C. § 1241(a). Section 8(d) of the Act, 16 U.S.C. § 1247(d), furthered this purpose by permitting the STB to issue a Notice of Interim Trail Use to halt a railroad abandonment proceeding

if the railroad agrees to negotiate with a prospective trail operator. If the parties reach agreement on interim use, the right-of-way is not abandoned. Rather, the railroad conveys its interest to the trail operator, the right-of-way is "rail banked" indefinitely for future railroad use, and the interim operator may use the right-of-way for trail purposes. Section 8(d) of the Trails Act was "the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." Preseault v. ICC, 494 U.S. 1, 5 (1990). It reflected two distinct congressional purposes, "to preserve established railroad rights-of-way for future reactivation of rail service," and "to assist recreation[al] users by providing opportunities for trail use on an interim basis." Id. at 17-18 (quotations omitted).

Section 8(d) furthered the first purpose by directing the STB to impose terms and conditions on interim use sufficient to preserve the right-of-way for reactivated rail service, and not to permit its abandonment. See 49 C.F.R. § 1152.29(d), (f), (h). But the STB may not compel the railroad and a trail operator to reach an interim-use agreement, nor may the STB refuse to permit trail use if the parties do reach agreement. "The role of the [STB] in conversion proceedings, then, is essentially ministerial." Goos v. ICC, 911 F.2d 1283, 1295 (8th Cir. 1990).

The STB regulations contain no provisions regulating how the trail operator will manage a trail. This is consistent with other Trails Act provisions. Section 8(e) provides that interim-use trails "may be designated and suitably marked as parts of the nationwide system of trails by the States . . . with the approval of the Secretary of the Interior." 16 U.S.C. § 1247(e). The power to regulate the national trails system lies with the Secretary of the Interior, the Secretary of Agriculture, and "other Federal agencies administering lands through which a . . . trail passes." 16 U.S.C. § 1246(i). In other words, Congress has specifically declared that the STB's jurisdiction to regulate or manage a former railroad right-of-way during its interim use as a trail is shared with numerous other federal departments and agencies, and with the States to the extent state regulation of trails is not federally preempted. See, e.g., Miami Cty.

Bd. of Comm'rs v. Kanza Rail-Trails Conservancy, Inc., 255 P.3d 1186, 1198-99 (Kan. 2011).

As the STB has itself recognized, its exclusive jurisdiction under 49 U.S.C. § 10501(b) "is limited to remedies with respect to rail *regulation* -- not state and federal law generally." Saratoga & N. Creek Ry., Docket No. FD 35631, 2012 WL 4840014, at *3 (S.T.B. Oct. 9, 2012), quoting PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 219 (4th Cir. 2009). The district court erred in concluding the STB has exclusive jurisdiction that it has never exercised. Cf. Hayfield N. R.R. v. Chi. & N.W. Transp. Co., 467 U.S. 622, 631-36 (1984).

4. Plaintiffs seek a declaration that Defendants acquired only a non-possessory easement that was limited to BN's use of the right-of-way for railroad purposes. "[S]tate law creates and defines the scope of the reversionary or other real property interests affected by the [STB's] actions pursuant to [§ 8(d)]." Preseault, 494 U.S. at 20 (O'Connor, J., concurring). When the issue does not affect present or future railroad operations, state and federal courts have jurisdiction to determine the nature and extent of the real property interests held by interim trail users and adjacent landowners such as Plaintiffs. Cf. Allegheny Valley R.R., Docket No. FD 35388, 2011 WL 1546589, at *3 (S.T.B. Apr. 21, 2011) ("[T]he size and extent of a railroad easement is a matter of state property law and best addressed by state courts."); Allegheny Valley R.R., Docket No. FD 35239, 2010 WL 2388142, at *7 (S.T.B. June 11, 2010) ("This is a question of property law, and it should be handled by a tribunal that frequently addresses such matters.").

Plaintiffs claim for declaratory relief turns on their allegation that South Dakota "stand[s] in the shoes of [its] railroad predecessors-in-interest concerning easement rights." In Preseault, the Supreme Court held that, to further the dual purposes of the Trails Act, Congress authorized the STB to prevent abandonment of a right-of-way by approving conveyance of the right-of-way for interim use to a trail operator, and

that such actions *may* give rise to a takings claim by the fee owner. 494 U.S. at 11-17. In subsequent decisions, the Federal Circuit and the Court of Federal Claims held that "[a] Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail." Caldwell v. United States, 391 F.3d 1226, 1229 (Fed. Cir. 2004), cert. denied, 546 U.S. 826 (2005); accord Toews v. United States, 376 F.3d 1371,1375-76 (Fed. Cir. 2004); Preseault v. United States, 100 F.3d 1525, 1550 (Fed. Cir. 1996) (en banc) ("a new easement for the new use"); Dana R. Hodges Tr. v. United States, 111 Fed. Cl. 452, 453 (2013); Illig v. United States, 58 Fed. Cl. 619, 631 (2003) ("a new easement").

In our view, these decisions properly reflect the plain meaning of § 8(d) and establish that Plaintiffs' second claim fails to state a claim upon which relief can be granted. Congress in the Trails Act intended to convey to the interim trail user a property interest that includes the right to use the acquired right-of-way for recreational trail purposes. Though the conveyance here took the form of a quit claim deed from BN to Defendants, as a matter of federal law it granted "a new easement for the new use." Plaintiffs contend that Defendants acquired from BN "only an easement for railroad purposes," as the 1875 Act was construed in Brandt. 134 S. Ct. at 1265 (quotation omitted). But even if that accurately describes what Defendants acquired directly from BN, it does not describe the "new easement" they acquired under the Trails Act, an interest which authorized Defendants to use the Trail for Trails Act purposes. Thus, Plaintiffs claim that Defendants "stand in the shoes" of the BN, and therefore Defendants cannot impose non-railroad restrictions on Plaintiffs' rights as servient landowners, fails as a matter of federal law.

Though this result may seem harsh, it is essential to note that the conveyance to Defendants under the Trails Act did not leave Plaintiffs without a remedy as property owners. Indeed, it left them with a variety of possible remedies -- for example, a takings action seeking compensation because Defendants' new easement

-8-

diminished the property rights Plaintiffs enjoyed when the right-of-way was limited to railroad uses; or a court action claiming that Defendants are unlawfully managing the Trail as a matter of federal or state law; or a petition to the STB claiming that Defendants' management of the Trail impairs restoration of the right-of-way to railroad use. And of course Plaintiffs can negotiate with state officials to allow Plaintiffs reasonable access and use of the right-of-way for their ranch operations, as they presumably negotiated with railroad operators in the past.

For the foregoing reasons, we remand to the district court for modification of its Order and Judgment to reflect that Plaintiffs' alternative claim for a declaratory judgment defining the parties' rights to use of the easement is dismissed for failure to state a claim upon which relief can be granted. In all other respects, the judgment is affirmed.

_____